**H. L. MEYER COMPANY, Inc.,
Petitioner,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

No. 19818.

United States Court of Appeals,
Eighth Circuit.

May 19, 1970.

As Modified June 8, 1970.

F. Lee Major and Clifton L. Elliott, of Spencer, Fane, Britt & Browne, Kansas City, Mo., for petitioner.

Donald W. Savelson, Attorney, N.L.R.B., Washington, D. C., for respondent; Arnold Ordman, Gen. Counsel, N.L.R.B., Dominick L. Manoli, Associate Gen. Counsel, N.L.R.B., Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., and Robert A. Giannasi, Attorney, N.L.R.B., were on the brief.

Before BLACKMUN, GIBSON and LAY, Circuit Judges.

LAY, Circuit Judge.

H. L. Meyer Co., Inc. seeks to set aside the National Labor Relations Board's decision as to the company's violation of §§ 8(a) (1) and 8(a) (3) and (1) of the National Labor Relations Act, 29 U.S.C. § 158. The Board by cross-application seeks to enforce its order reported at 177 N.L.R.B. No. 75.

H. L. Meyer Co., Inc. is engaged in the manufacture of optical equipment. Its Kansas City plant is the only facility involved in the present proceeding. The unfair practice charges arose after Local Union 838 [1] filed a representation petition with Region 17 of the Board requesting the certification of a bargaining representative election. The Union lost the election 64 to 45, and thereafter on March 6, 1968, objections to the conduct of the election were filed by the Union.[2] The present charges were filed against the company thereafter.

The § 8(a) (1) charges are diverse in nature. One charge is based upon a company supervisor's prolonged argument with one of the employees replete with threats and reprisals over union membership prior to the election; a second, upon a supervisor's threatening employees with loss of benefits because of union activity; and a third, upon the company's alleged wrongful installation of a suggestion box, used to impliedly promise benefits so as to discourage union activity. The § 8(a) (3) violation is premised on the alleged wrongful discharge of an employee, Jannie Rollins. We find substantial evidence to support the § 8(a) (1) charges but deny enforcement as to the § 8(a) (3) violation.

*The 8(a) (1) violations.*

There is substantial evidence to support the Board's findings that the company conducted a vigorous anti-union campaign. There is also evidence of wrongful interrogation of employees during the organizational campaign. Although § 8(c) allows a company to campaign against the union, it marks definite boundaries as to when its conduct may be prohibited.[3] In the instant case there exists substantial proof that the company overstepped these bounds.

This court has observed on many occasions that an employer's interrogation of its employees is not unlawful per se, unless it is conducted in a background of company hostility so as to induce a fear of reprisal in the employee for his union activity. See e.g. NLRB v. Ralph Printing & Lithographing Co., 379 F.2d 687 (8 Cir. 1967). When interrogation serves as a threat, either direct or implied, which dissuades the employee from participating in concerted activity it is unlawful. The record contains several instances of such coercive interrogation.[4]

---

1. Teamsters Local 838, Warehouse and Mail Order Union, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

2. The Board ordered a new election.

3. Section 8(c) of the National Labor Relations Act, 29 U.S.C. 158, provides: "The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit."

4. The plant manager, himself, on several occasions threatened employees. On one occasion the trial examiner found he had warned one employee that another employee, who was a union activist, "could get [him] in a whole lot of trouble." Another anti-union employee in the presence of a supervisor was said to have warned other employees that the success of the union would result in the plant closing. Employees were also stopped by supervisors and questioned concerning their union activities.

The fact that several of these interrogations were of a single employee does not in itself remove them from the status of unfair practices under the Act. There was more than one instance of such interrogation and each incident occurred in a continuing background of overall union hostility by the company. Cf. NLRB v. Crystal Tire Co., 410 F.2d 916 (8 Cir. 1969).

■ The Board also found that the company wrongfully installed a suggestion box in order to answer questions, in violation of the Act. It was the Board's determination that the company used questions submitted by employees to imply promises of future benefits and to explain their present withholding of benefits because of the election. The company posted these lists of questions and answers. The Board likewise found that the company attempted to resolve employee grievances through this procedure. The company asserts that the answers were permissible under § 8(c) and did not constitute any promise of benefit or threat of reprisal. We have approved question and answer meetings before elections where the discussions avoided any attempt by the company to imply promises of benefit if the union was defeated. See Fairchild Camera & Instrument Corp. v. NLRB, 404 F.2d 581 (8 Cir. 1968). However, in the instant case we find the evidence reasonably supports the Board's finding that the purpose of the published lists was "to imply certain offers of benefits should the Union be defeated, * * *" The company in answering one question submitted, confirmed that specific benefits had recently been given to its employees at other plants but noted that because of the forthcoming election similar benefits could not be given in Kansas City. Similarly, the company acknowledged the "possibility" of wage increases if the union lost the election. The company's explanation, that it was merely providing a lawful means to air grievances, cannot stand in view of the totality of the circumstances surrounding the use of the box and the phraseology of the answers.

Cf. NLRB v. Delight Bakery, Inc., 353 F.2d 344 (6 Cir. 1965); NLRB v. Larry Faul Oldsmobile Co., 316 F.2d 595 (7 Cir. 1963). The overall circumstances under which the company's statements were made are highly relevant to a judgment as to whether there were § 8(a) (1) violations. NLRB v. Gissel Packing Co., 395 U.S. 575, at 620, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). The record contains substantial proof of union animus. There can be little doubt that the use of the suggestion box in this case was intended to reflect adversely upon the union. The innocuous answers to some questions cannot salvage or redeem the calculated mischief done by others.

*The discharge of Jannie Rollins.*

■ The employee Rollins was a Negro woman who had been employed by the company for approximately one and a half years. She had been active in promotion of the union. The evidence shows the company was fully aware of her activities. She was never reprimanded for them but at one time was asked by her foreman whether she had ever belonged to a union. When she answered yes, the foreman asked her what the union had ever done for her or the other employees.

On January 30, Rollins while at work had a conversation with Gladys Hall, a Negro, who had applied for work at the H. L. Meyer Co. Hall had been told by company officials that there were no job openings available, and queried Rollins whether the company was hiring anyone at this time. According to Rollins, she replied, "Yes, quite a few white, no colored lately." According to another witness, who allegedly overheard the conversation, Gladys Hall said that Rollins told her, "Honey, they aren't hiring any colored." The company had hired seven white employees and no Negroes in the preceding two months. However, at that time between 30 and 40 percent of the employees at the Kansas City plant were Negroes.

The trial examiner observed that despite union animus and company knowledge of Rollins' union activity, *if it were*

*shown that Rollins had given expression to "a false and malicious" slander of the company's hiring policy,* then there would be "considerable force in the argument that the respondent's decision to get rid of her was not motivated in any way by her prominence in the union movement." The examiner then determined that Rollins had not slandered the company. He found that she was telling the truth, crediting only her version that she answered Hall's inquiry whether "they were hiring," by saying, "Yes, quite a few white, no colored lately." Since the company had not hired any blacks in the period from December 1967 to February 1968, the examiner felt Rollins' statement to be truthful.

The difficulty with the examiner's analysis is that he attempts to resolve the issue of pretextual discharge on grounds outside the statute. The issue under § 8(a) (3) is whether the employee was discharged by reason of her union activities. The examiner concluded that she was, not because of evidence tending to prove that fact, but because Rollins made a truthful statement as to the company's employment practice. The fallacious syllogism results: (1) Rollins, notwithstanding the existence of union animus, could be lawfully discharged if she made a slanderous statement. (2) Rollins did not make a slanderous statement. (3) Rollins cannot be lawfully discharged.

The Board apparently sensing an erroneous approach, acknowledged that a finding of racial discrimination by the company was not a necessary prerequisite to the finding of a violation of § 8(a) (3). The Board, however, found that the company effected the discharge before making a complete investigation, that the company was aware of Rollins' union activity, that her remark could not have reflected any established company policy, but only a "recent exclusion of Negro employees," and that the company's alleged concern over race relations was contradicted by the firing of a long time, well known Negro employee. Bas-

ed upon these findings the Board found that the discharge was pretextual.

There is no showing by direct or indirect proof that the discharge was in any way motivated by Rollins' union activity. All events leading up to Rollins' discharge were precipitated by her statement made to Gladys Hall. Her statement was investigated in detail. Verification of what Rollins told the work applicant, Gladys Hall, and which was then repeated by Hall to another employee was obtained by the company before they decided to discharge Rollins. The Board's analysis that Rollins did not slander the company since she could not refer to any established policy but only to recent exclusion of Negroes is specious to say the least. The remark, with its implication of racial discrimination, whether well established or recently followed, carried serious consequences. The repetition of the remark among the employees and the discord which followed were not denied. Whether made by white or black, and whether true or false, the remark was seriously disparaging to the company's interests. It is common knowledge in these sensitive times that misunderstandings in the area of race relations are easily provoked by minimal conduct or a careless word.

The converse of Judge Gibson's statement in NLRB v. Melrose Processing Co., 351 F.2d 693, 699 (8 Cir. 1965), is applicable here. Where the reasons advanced for discharge are persuasive and serve as a plausible motive, the mere existence of the employee's union activity cannot serve as the real motive behind the employer's action. Cf. Broadway Motors Ford, Inc. v. NLRB, 395 F.2d 337 (8 Cir. 1968); NLRB v. South Rambler Co., 324 F.2d 447 (8 Cir. 1963). The grounds for discharge stand persuasive and the circumstances serve to corroborate this ground as the motivating cause for discharge.

We grant enforcement of the finding of a violation of § 8(a) (1) but deny enforcement under § 8(a) (3) and (1).