33 P.3d 74 (2001)
107 Wash.App. 694
PUBLIC EMPLOYEES RELATIONS COMMISSION; and Vancouver Police Officer's Guild, Respondents,
v.
CITY OF VANCOUVER, Appellant.
No. 25518-9-II.
Court of Appeals of Washington, Division 2.
August 3, 2001.
*76 Michelle Holman Kerin, Asst. City Attorney, Portland, OR., Debra Quinn, Asst. City Attorney, Terry Michael Weiner, Asst. City Attorney, Vancouver, WA., for Appellant.
David Alan Snyder, Portland, OR., Spencer Walter Daniels, Attorney Generals Office, Olympia, WA., for Respondent.
Jaime B. Goldberg, Portland, OR., Amicus Curiae Clark County Sheriff's Guild.
Lisa Carol Vargo, Aithchison & Vick, Renton, WA., Amicus Curiae Auburn Police Guild.
*75 BRIDGEWATER, J.
The City of Vancouver (the City) appeals a final order of the Public Employees Relations *77 Commission (PERC), which found that the City committed an unfair labor practice in violation of RCW 41.56 for questioning members of the bargaining unit represented by the Vancouver Police Officers Guild (Guild) about discussions that took place at Guild Executive Board (Board) and general membership meetings. Allegedly, Guild members made comments regarding possible retaliation toward a guild member, Officer Navin Sharma, because of information given by Sharma about his sergeants in the course of an Internal Affairs (IA) investigation. PERC's hearing examiner (Examiner) ruled in favor of the City, finding that no Guild member could have reasonably perceived the City interfered with their collective bargaining rights or would interfere with future union activity. PERC disagreed, and ruled for the Guild.
We reverse PERC's ruling, holding that an employer may ask questions regarding discussions occurring at a union meeting so long as they do not amount to interference with collective bargaining rights protected by RCW 41.56, which the questions here did not. We also hold that RCW 41.56, which protects union activity, is subject to a reasonableness test, and that because the officer's safety was a legitimate concern of the employer, the employer could ask narrowly tailored questions of employees concerning the union meeting. Therefore no reasonable employee would perceive that the City was interfering with collective bargaining rights. Thus we hold that the City did not commit an unfair labor practice.

FACTS
The Guild is the sole bargaining unit, representing about 150-170 uniformed police holding the ranks of officer, corporal, and sergeant employed by the City. The sergeants' primary role is to supervise officers assigned to their patrol shift. Members of the Guild's Executive Board (Board) hold regular meetings and are responsible for day-to-day guild business. Both the Board and general membership meetings are not open to the public or management. The meetings are "the forum by which free-flowing discussion occurs among bargaining unit members." Clerk's Papers (CP) at 181 (Finding of Fact 4). On and off duty officers attend the meetings.
The City uses an internal affairs (IA) procedure to investigate alleged misconduct of police officers. The aim of IA investigations is to determine whether a violation of Vancouver Police Department (VPD) policy has occurred. Employees are subject to discipline if they fail to answer fully and truthfully questions posed to them during an IA investigation. In June 1998, the City commenced IA investigation No. IA 98-31 regarding the conduct of some sergeants at a VPD training session. Investigators interviewed Sharma regarding the conduct of his sergeants at the training session. Sharma's comments were the subject of discussion at subsequent Board and general membership meetings. An officer who attended the general membership meetings allegedly told Sharma about the discussions; he expressed concern for Sharma's safety.
Sharma told Lt. Hall about what had been relayed to him as employee comments made at the Board and Guild general membership meetings. Sharma relayed to Hall that another officer told him he "had been the subject of conversation" at a Board meeting and general membership meeting. Ex. 1. Lt. Hall subsequently filed allegations against the employees, accusing them of making disparaging comments about Sharma's IA 98-31 interview at the union meeting. The allegations included violations of VPD Rules of Conduct regarding harassment, respect toward members and others, violations of canons of ethics for law enforcement, and violations of the City's harassment and discrimination policies. The allegations pertained to statements made at a Board meeting and/or a general membership meeting that: (1) Sharma was a "not a friend of the guild" and had revealed too much in IA 98-31; (2) members should possibly boycott a charity program that Sharma had organized; (3) members should release or post Sharma's IA 98-31 interview transcript to be viewed by other officers; (4) Sharma's new sergeant would "straighten him out;" (5) the alleged "black-balling" might go as far as not covering Sharma on *78 calls.[1] Sharma also maintained that his SWAT[2] locker had been rifled through and that his supervisors on the SWAT team (subjects of IA 98-31) gave him "cold shoulder" treatment. It appeared to Hall that Sharma believed that certain sergeants had instigated a concerted effort to "get even" with Sharma for his IA 98-31 testimony.
Deputy Chief Thiessen, responsible for IA investigations, reviewed the allegations. Independently, she was aware of rumors that employees were angry at Sharma and were referring to him as a snitch. She had concerns for Sharma's safety and felt that the City had a duty to investigate possible harassing, retaliatory, or discriminating behavior. The VPD human resource analyst, a former labor and employment attorney, was also concerned that there might be violations of federal civil rights lawi.e., laws against harassment, discrimination, or retaliation under Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e et seq. The analyst also had concerns for Sharma's safety. The analyst, who participated in the discussions about whether to investigate the allegations, felt that the City had a duty to investigate. Based on Deputy Thiessen's recommendation, the City initiated an IA investigation. The City approved stress-related disability leave for Sharma, and removed him from a patrol unit supervised by one of the sergeants who was the subject of the IA investigation.
As part of its investigation, the City questioned at least 26 Guild members, 5 of whom were Board members, about the alleged comments made at the Board and general membership meetings. The City utilized some Guild members in questioning the members. The City invited a Guild representative to attend the interviews. The City took "safeguards" before initiating interviews. First, Deputy Thiessen instructed the investigators to not ask questions about union strategy or policy. Second, Deputy Thiessen asked the investigators to show the questions to the legal department to ensure that the questions did not seek information regarding union activity. Third, the City read to police officers the following statement before commencing the interview:
We will not ask any questions regarding Guild policy, practice, or strategy. The City of Vancouver Police Department does have a legitimate interest of protecting employees from possible conduct that is retaliatory, discriminatory, and/or harassing. Consequently, questions pertaining to Guild executive board meetings will be circumscribed to illicit only those facts related to alleged violations of City and Vancouver Police Department Policy.
Admin. Record at Ex. 10. Guild members faced disciplinary proceedings if they failed to answer the questions. The City also allowed each witness to have legal representation present during questioning, which was not the customary practice in previous IA investigations. The City did require that a member's attorney reserve any questions and objections until later in the interview so as not to interfere with the investigation.
On February 2, 1999, the first day that the City questioned Guild members, the Guild filed a complaint with PERC charging the City with unfair labor practices, specifically with interference with employee rights under RCW 41.56.140(1). On March 17, 1999, PERC voted to seek an injunction restraining the City from continuing its interrogation of Guild members. Clark County Superior Court then entered a preliminary injunction.
A PERC Examiner presided over a twoday hearing. Before the hearing, the Guild filed a motion in limine seeking to exclude particular statements made by Guild members and specific discussions that occurred at Guild meetings. The Examiner refused to issue "a blanket ruling," instead entertaining specific objections to specific questions that might undermine the restraining order. The Examiner stated that the effect of the superior court's injunction was to freeze the employer's investigation and that she did not want to undercut that ruling. The Examiner also stated at the outset that she thought *79 that the truth of the alleged comments was irrelevant to the issue to be decided.
The Examiner found that no Guild member could have reasonably perceived the City interfered with his or her collective bargaining rights or future union activity. Thus, the Examiner concluded that the Guild did not establish that the City's interrogation of the employees in the circumstances of the case interfered with their rights in violation of RCW 41.26.140(1). The Examiner dismissed the complaint. The Examiner held that the City could question union officers and bargaining unit members about the alleged harassing, discriminatory, and retaliatory comments made about Sharma during a union meeting.
The Guild petitioned PERC for review of the Examiner's decision. PERC reversed the Examiner. PERC differed from the Examiner on a crucial finding of fact; PERC found that the Guild members could have reasonably perceived the City's questions about what had "transpired at the private union meetings coercive, and as interfering with their collective bargaining rights under chapter 41.26 RCW." CP at 183. Also, in its decision PERC indicated that the City had not established a legitimate basis for any safety concerns for Sharma. PERC also found that Guild members could reasonably perceive that the future possibility of interrogation would subject them to discipline and would limit their ability to freely conduct union business within the confines of a private union meeting. Consequently, PERC concluded that the City had committed an unfair labor practice in violation of RCW 41.56.140(1), and ordered the City to cease and desist its interrogation of police "employees concerning discussions and conduct occurring at private meeting of the Vancouver Police Officers Guild." CP at 183.

I. Standard of Review
We review an appeal from a PERC decision of a ULP in accordance with the Administrative Procedure Act (APA)[3], which provides for relief when an agency has erroneously interpreted and applied the law or from an agency order that is unsupported by substantial evidence. RCW 34.05.570(3)(d), (e). Under the APA, the party challenging the validity of an agency action has the burden of demonstrating the invalidity of that action. RCW 34.05.570(1)(a).
We apply these standards to PERC's decision, as opposed to that of the Examiner or the superior court. Vancouver Sch. Dist. No. 37 v. Serv. Employees Int'l Union, Local 92, 79 Wash.App. 905, 917, 906 P.2d 946 (1995), review denied, 129 Wash.2d 1019, 919 P.2d 600 (1996), abrogated in part on other grounds, City of Federal Way v. PERC, 93 Wash.App. 509, 512, 970 P.2d 752 (1998)[4]; Int'l Ass'n of Firefighters, Local 469 v. PERC, 38 Wash.App. 572, 575-76, 686 P.2d 1122 (1984). When reviewing questions of law, an appellate court may substitute its determination for that of PERC, although PERC's interpretation of the collective bargaining statutes is entitled to great weight and substantial deference. RCW 34.05.570; City of Bellevue v. Fire Fighters, Local 1604, 119 Wash.2d 373, 382, 831 P.2d 738 (1992) Pub. Sch. Employees of Quincy v. PERC, 77 Wash.App. 741, 745, 893 P.2d 1132 (1995). In addition to Washington law, we rely on federal decisions construing the National Labor Relations Act (NLRA)[5] because decisions construing the NLRA are persuasive when construing similar provisions of RCW 41.56. Pasco Police Officers' Ass'n v. City of Pasco, 132 Wash.2d 450, 458, 938 P.2d 827 (1997); Nucleonics Alliance, Local Union No. 1-369 v. WPPSS, 101 Wash.2d 24, 32-33, 677 P.2d 108 (1984).
We review challenges to PERC's factual findings for substantial evidence in light of the whole record, i.e., evidence sufficient to persuade a fair-minded person of *80 their truth. City of Federal Way, 93 Wash. App. at 512, 970 P.2d 752; Valentine v. Department of Licensing, 77 Wash.App. 838, 844, 894 P.2d 1352, review denied, 127 Wash.2d 1020, 904 P.2d 300 (1995). Because PERC is entitled to substitute its findings for those of the Examiner, PERC's findings are the relevant findings for appellate review. City of Federal Way, 93 Wash.App. at 512, 970 P.2d 752; Valentine, 77 Wash. App. at 844, 894 P.2d 1352. The Examiner's findings are part of the record, however, and we weigh them along with other opposing evidence against the evidence supporting PERC's decision. Pasco Police Ass'n, 132 Wash.2d at 459, 938 P.2d 827. While the APA provides that the reviewing agency can substitute its own findings of fact for that of the hearing examiner's where they are supported by substantial evidence, "such substitutions cannot be arbitrary and capricious; an action is arbitrary or capricious when the governmental body reaches its decision willfully and unreasonably, without consideration and in disregard of facts or circumstances." Towle, 94 Wash.App. at 209, 971 P.2d 591.
The City appeals PERC's reversal of the examiner's decision on three grounds:
(1) error in applying and interpreting the law;
(2) arbitrary and capricious substitution of examiner's findings of fact; and
(3) PERC's findings not being supported by substantial evidence.

II. Interference with Collective Bargaining Rights
Public employees and their unions have a right to collectively bargain. RCW 41.56.040.[6] Specifically, RCW 41.56.140(1) provides that it is an "unfair labor practice for a public employer ... [t]o interfere with, restrain, or coerce public employees in the exercise of their rights guaranteed by this chapter." Similarly, section 8(a)(1) of the NLRA provides: "It shall be an unfair labor practice for an employer(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title[.]" 29 U.S.C. § 158(a)(1). Collective bargaining means "the performance of the mutual obligations of the public employer and the exclusive bargaining representative to meet at reasonable times, to confer and negotiate in good faith, and to execute a written agreement with respect to grievance procedures and collective negotiations on personnel matters[.]" RCW 41.56.030(4). The NLRA defines "collective bargaining" in substantially similar terms at 29 U.S.C. § 158(d). Int'l Ass'n of Fire Fighters, Local 1604, 119 Wash.2d at 383 n. 2, 831 P.2d 738.
A. Employer Questioning Permissible (Federal Standard)
The Guild and amicus police unions advocate a rule that the right to collectively bargain includes the right to be free from any employer questioning regarding any discussions or conduct taking place at union meetings. But the law does not assume automatic employer interference when an employer questions employees who are part of a collective bargaining unit.
First, under section (8)(a)(1) of the NLRA[7], an employer unlawfully interferes with union activity if the evidence is sufficient to show that an employer's actions would tend to coerce a reasonable employee. The evidence does not need to show that an employer actually intimidated or coerced employees by its conduct. ITT Automotive v. NLRB, 188 F.3d 375, 384 (6th Cir.1999). In other words, the evidence must demonstrate that, taken from the point of view of the employees, the reasonable tendency of an employer's conduct or statements is coercive in effect. ITT Automotive, 188 F.3d at 384.
However, even an employer's interrogation or interview of employees with respect to union activities is not per se unlawful. *81 ITT Automotive v. NLRB, 188 F.3d 375, 389 (6th Cir.1999); NLRB v. Nueva Engineering, Inc., 761 F.2d 961, 965 (4th Cir. 1985); NLRB. v. Rich's Precision Foundry, Inc., 667 F.2d 613, 624 (7th Cir.1981); NLRB v. Super Toys, Inc., 458 F.2d 180, 182 (9th Cir.1972); H.L. Meyer Co. v. NLRB, 426 F.2d 1090, 1092 (8th Cir.1970); NLRB v. J. Weingarten, Inc., 339 F.2d 498, 500 (5th Cir.1964). An employer with a legitimate reason to inquire may interrogate employees on matters that relate to their collective bargaining rights without incurring liability under the NLRA, 29 U.S.C. § 158(a)(1). NLRB v. Ambox, Inc., 357 F.2d 138 (5th Cir.1966); the interrogation becomes illegal when the words themselves or the context in which they are used suggests an element of coercion or interference with protected union-related activities. Ambox, Inc., 357 F.2d at 141.
In determining whether an employer's interrogation amounts to interference, a number of federal circuits consider the following factors: (1) the history of the employer's attitude toward its employees; (2) the type of information sought; (3) the company rank of the questioner; (4) the place and manner of the conversation; (5) the truthfulness of the employee's responses; (6) whether the employer had a valid purpose for obtaining the information; (7) if so, whether the employer communicated it to the employee; and (8) whether the employer assured the employee that no reprisals would be forthcoming should he or she support the union. Bourne v. NLRB, 332 F.2d 47, 48 (2d Cir.1964); see also ITT Automotive v. NLRB, 188 F.3d 375, 390 n. 10 (6th Cir. 1999); NLRB v. McCullough Envtl. Serv., Inc., 5 F.3d 923, 928 (5th Cir.1993); First Lakewood Assoc. v. NLRB, 582 F.2d 416, 419 (7th Cir.1978); Midwest Reg. Joint Bd., Amal. Clothing Workers of Am. v. NLRB, 564 F.2d 434, 443 (D.C.Cir.1977); NLRB v. Consol. Diesel Elec. Co., 469 F.2d 1016 (4th Cir.1972).
But a court may still find coercive interrogation to have occurred even if all of these enumerated factors operate in the employer's favor; the factors provide general guidance, not a per se rule. McCullough Envtl. Serv., Inc., 5 F.3d at 928; First Lakewood Assoc., 582 F.2d at 419.[8] For example, at least one circuit has held that an interrogation is inherently suspect and coercive unless an employer gives its employees express assurances against reprisals. NLRB v. Fort Vancouver Plywood Co., 604 F.2d 596, 599 n. 1 (9th Cir.1979).[9] In sum, the basic test used by the NLRB for evaluating the legality of an interrogation is "whether under all of the circumstances the interrogation reasonably tends to restrain, coerce, or interfere with rights guaranteed by the Act." V & S ProGalv, Inc. v. N.L.R.B., 168 F.3d 270, 280 (6th Cir.1999) (citations omitted); see also Hotel Employees & Restaurant Employees Union, Local 11 v. NLRB, 760 F.2d 1006 (9th Cir.1985).
Specifically with regard to union meetings, an employer's unlawful surveillance or an impression of unlawful surveillance of a union meeting amounts to interference with union activity. See e.g., NLRB v. Grand Canyon Min. Co., 116 F.3d 1039, 1046 (4th Cir.1997) (unlawful surveillance where single comment regarding worker's presence at meeting gave impression of surveillance); NLRB v. Nueva Engineering, Inc., 761 F.2d 961, 967 (4th Cir.1985) (unlawful surveillance where two supervisors openly followed employees thought to be on their way to a union meeting); Marathon LeTourneau Co., Longview Div. v. NLRB, 699 F.2d 248, 255 (5th Cir.1983) (unlawful surveillance where supervisor questioned employee about going to a union meeting and berated him for attending); *82 NLRB v. S.E. Nichols-Dover, Inc., 414 F.2d 561, 563 (3d Cir.1969). While surveillance is unlawful only where it interferes with the organizational rights of employees, an explicit finding to that effect is unnecessary where an inference of interference may reasonably be drawn. NLRB v. Southwire Co., 429 F.2d 1050, 1054 (5th Cir.1970), cert. denied, 401 U.S. 939, 91 S.Ct. 932, 28 L.Ed.2d 218 (1971). The employer's statement need only contain sufficiently specific information to convey the impression that the employer or its agents have conducted union surveillance. Grand Canyon Min. Co., 116 F.3d at 1046.
Here, PERC applied an abbreviated version of the rule. It stated that to "establish an interference violation under RCW 41.56.140(1), a complainant need only establish that a party engaged in conduct which employees could reasonably perceive as a threat of reprisal or force or promise of benefit associated with their union activity." Vancouver Police Officer Guild, PECB 6732-A at 10 (1999) (citing City of Seattle, PECB 3066 (1989)). PERC has also stated that the test for an interference violation is "whether the employer conduct reasonably tended to interfere with the free exercise by employees of their right under the collective bargaining statute." Metro. Park Dist. of Tacoma, PECB 2272 at 10 (1986). Regarding surveillance, PERC stated that an employer commits a violation of RCW 41.56.140(1) "if it creates the impression that it is engaged in surveillance of employees engaged in protected activities, even if there was no actual surveillance." Longview Police Guild, PECB 4702 (1994).
PERC reasoned that Longview Police Guild supports finding a violation in this case; PERC incorrectly applied this case. In Longview Police Guild, a police chief specifically interrogated the union president about comments made about him at a union meeting after the chief had given a speech. Longview Police Guild, 1994 WL 900095 at *1. Acting on specific information from the union president, the chief directly confronted the individual who had made negative comments about him. Longview Police Guild, 1994 WL 900095 at *1. PERC found an unfair labor practice because the chief's interrogation of the union president and his confrontation of the employee with specific allegations gave the impression of surveillance of a union meeting. Longview Police Guild, 1994 WL 900095 at *3.
The Examiner distinguished the instant case from Longview Police Guild because unlike that case, the VPD management legitimately obtained information volunteered by bargaining unit members. PERC reasoned, however, that because the union meetings were private in this case, and there was evidence that union affairs were freely discussed between the parties, the impression of surveillance prevailed. Because union meetings are private does not alter the fact that: (1) the subject of the alleged misconduct informed the employer about it and other members of the bargaining unit freely and voluntarily shared their concerns with Deputy Thiessen about the discussions at the meetings. We agree with the Examiner; Longview Police Guild does not support finding an impression of surveillance of lawful union activities.
Looking at the totality of the circumstances in this case, we hold that substantial evidence does not support PERC's finding that a reasonable employee would perceive that the employer was interfering with his or her collective bargaining rights. PERC failed to examine the totality of the circumstances, instead relying on the mere fact that the alleged misconduct had taken place at a union meeting. Applying the Bourne factors, the evidence shows that: (1) the City did not have a history of questioning Guild members about conduct at meetings; (2) the IA investigators informed the interviewee that they did not intend to inquire about Guild strategy, policy, or business and they limited the questions to possible harassment, discrimination, and retaliatory conduct; (3) the questioning was performed by Guild members themselves; (4) the questioning was formal and conducted at the precinct; (5) the employee had to answer truthfully on threat of discipline; (6) the City had a valid purpose in investigating possible harassing and retaliatory conduct and concerns for officer safety; (7) the investigators read the *83 limiting statement before the interview. Although the questioning was part of a formal investigation, it was not a formal investigation into union activity, but into possible violations of City and VPD conduct that happened to take place at a union meeting. It was not an investigation into union activity itself. Any discipline or reprisals resulting from the investigation would not be for protected union activity, but because of harassing, discriminatory, or retaliatory conduct that violated City and police policy. See Vancouver Sch. Dist. No. 37, 79 Wash.App. at 926, 906 P.2d 946 (citing NLRB v. Washington Aluminum Co., 370 U.S. 9, 17, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1962) (stating that employee activity loses its protection when it is unlawful, violent, in breach of contract, or "indefensibly" loyal)); Inland Boatmen's Union of the Pacific, PECB 6348, 1998 WL 823591at *7 (not unlawful surveillance where employer stationed police officers on board the ferry to conduct surveillance of possible vandalism, damage, and/or verbal altercations with patrons by bargaining unit employees because that conduct was unprotected). We hold that no reasonable employee would perceive that the City interfered with his or her collective bargaining rights or future union activity.[10] (Specifically, we hold that there was not substantial evidence upon which PERC could make amended Findings Nos. 10 and 11[11]) As such, the findings are arbitrary and capricious.
Second, we have recently held that not all union activity is absolutely protected by RCW 41.56. Here, the Guild takes the position that an employer cannot question an employee about any discussions or conduct which occurs at a union meeting.[12] We have held that conduct may fall outside of the protections of labor statutes if the conduct is irresponsible and abusive. We imposed a reasonableness test under which to evaluate such conduct. Vancouver School District v. Service Employees Int'l Union, Local 92, 79 Wash.App. 905, 906 P.2d 946 (1995). PERC misinterprets our holding. The action need not be unlawful, but merely unreasonable. The allegations here concerned a conspiracy to harass a fellow officer which were brought to light by one of VPOG's own executive board members because of his concern for Sharma's safety. Our decision in Vancouver also points to whether the offending union member knew his conduct would cause concernin this case, the point of the conversation was to affect Sharma outside of the meeting. Also, we looked in Vancouver to see if the employee's activities were disruptive to the employer's role as supervisor; in this case there is no doubt that it was disruptive to the City's role as supervisor to the police.
The City complains that PERC has shifted the burden of proof. However, as we view this case, there should be a shifting burden of proof. The Guild should only have to allege that the City is looking into union meeting activities, generally a protected area; then the City should have to bring forth evidence to demonstrate a justification for its actions. In this case the City demonstrated what evidence was known to it that *84 has been heretofore stated, including threats to harass Sharma, to "straighten him out," and not to cover him on calls. The Guild argued that if action had actually been taken against Sharma where he had been injured, then the action by the City would have been reasonable. However, there was sufficient evidence for the City to have had justifiable concern for the safety of Sharma: (1) a Board member of the Guild warned Sharma's supervisor about Sharma's safety; (2) Sharma was concerned for his own safety; (3) Sharma was called a "snitch"; (4) Sharma's supervisor was concerned about whether he would be backed up on calls; (5) the sergeants allegedly took steps in furtherance of their conspiracy of retaliation by posting and circulating Sharma's IA testimony and rifling through his SWAT equipment. Indeed, for the City to have done less would have been blameworthy. PERC's conclusion that the City did not establish a legitimate basis for the safety concern of Sharma is not supported in any way by any evidence. This assertion was arbitrary and capricious. We hold that there was a legitimate safety concern. We conclude that a conspiracy to retaliate against a fellow police officer was not a reasonable exercise of union activity.
Additionally, if the allegations proved true and were violations of police department policy, an employee could not reasonably believe that any resulting discipline interfered with union activity. Union activity that is not reasonable is not "protected activity" within the meaning of RCW 41.56.140. We hold that the City did not interfere with protected union activity and the City did not commit an unfair labor practice.
We emphasize that our holding allowing an employer to ask questions about discussions at union meetings does not allow the employer to investigate union policies, procedures, or lawful strategies. Nor does it allow an employer to engage in a fishing expedition to obtain information that is protected by RCW 41.56.
Questioning, even under these tight controls, has the potential to invade union security. Nonetheless, under the unique facts of this case, the employer's questions about discussions at a union meeting were reasonable and did not interfere with collective bargaining rights.
The investigation here was lawful because (1) the subject of the investigation was proposed conduct that could have threatened the safety of an officer; (2) the employer learned about the discussions from independent sources who volunteered the information; and (3) the employer carefully structured the interviews to avoid questions about union strategy or policy. Thus, the employer's questions focused on the critical concern, the safety of Officer Sharma, which the employer could not ignore.
Because of our decision, we do not address other arguments raised by the City.
Reversed.
MORGAN, P.J., and SEINFELD, J., concur.
NOTES
[1] Rule 7.4 of the VPD Rules of Conduct requires officers to act "together to assist and protect each other in maintaining law and order."
[2] "Special Weapons and Delay Tactics" unit.
[3] RCW 34.05.001, et seq.
[4] City of Federal Way noted that PERC had recently abandoned the "substantial factor or motivating factor" test as applied in Vancouver Sch. Dist. No. 37, in favor of a different test to claims of retaliation under RCW 41.56.140(1). City of Federal Way, 93 Wash.App. at 512, 970 P.2d 752. This holding does not effect the analysis of this case because it does not involve a claim of discharge as retaliation for protected union activity.
[5] 29 U.S.C. § 151 et seq.
[6] RCW 41.56.040 provides: "No public employer, or other person, shall directly or indirectly, interfere with, restrain, coerce, or discriminate against any public employee or group of public employees in the free exercise of their right to organize and designate representatives of their own choosing for the purpose of collective bargaining, or in the free exercise of any other right under this chapter."
[7] 29 U.S.C. § 158(a)(1).
[8] The NLRB adopted these same factors by adopting similar factors from a predecessor to Bourne. Blue Flash Express, Inc., 109 NLRB 591, 594 (1954).
[9] In the context of an unfair labor practice proceeding, since Johnnie's Poultry Co., 146 NLRB 770 (1964), enf. denied, 344 F.2d 617 (8th Cir. 1965), the NLRB has consistently required an employer to administer three warnings to each employee it interviews: (1) instruct him of "the purpose of the questioning; (2) assure him that no reprisal will take place; and (3) obtain his permission on a voluntary basis." L & L Wine & Liquor Corp., 323 NLRB 848, 853 (1997). See also, e.g., Dayton Typographic Serv. v. NLRB, 778 F.2d 1188, 1195 (6th Cir.1985); ITT Automotive v. N.L.R.B., 188 F.3d 375, 379.
[10] Moreover, although the test is an objective one, it is persuasive that none of the sergeants who IA questioned testified that they felt their rights were interfered with by the questioning; rather, they speculated on what officers might feel if the City had unlimited discretion to ask about conduct at union meetings. The only evidence on subjective perception of surveillance was negative; one sergeant testified that he did not feel he was restrained from voicing his opinions at union meetings because of the questions asked at IA 99-01.
[11] Findings of Fact 10 and 11 provide as follows:

10. Employees in the bargaining unit represented by the Vancouver Police Officers Guild could reasonably perceive interrogation by employer officials about discussions and events that transpired at private union meetings as coercive, and as interfering with their collective bargaining rights under Chapter 41.56 RCW.
11. Employees in the bargaining unit represented by the Vancouver Police Officers Guild could reasonably perceive that the future possibility of interrogation of the type described in paragraph 10 of these findings of fact would subject them to discipline and would limit their ability to freely communicate with fellow bargaining unit employees and to freely conduct union business in the confines of private union meetings.
[12] The Guild admitted that the chief could have inquired after opening a criminal investigation, but then the members could have asserted their Fifth Amendment privileges.