FILED
COURT OF APPEALS
DIVISION II

2013 DEC 17 AM 8:50

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SNOHOMISH COUNTY PUBLIC TRANSPORTATION BENEFIT AREA d/b/a COMMUNITY TRANSIT, | No. 43783-0-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON PUBLIC EMPLOYMENT RELATIONS COMMISSION and AMALGAMATED TRANSIT UNION, LOCAL 1576, | UNPUBLISHED OPINION |
| Respondents. | |

QUINN-BRINTNALL, J. — Snohomish County Public Transportation Benefit Area d/b/a Community Transit appeals from the superior court's order affirming an administrative order issued by the Public Employment Relations Commission ("PERC"). In the administrative order, PERC ruled that Community Transit committed an unfair labor practice when it insisted to bargaining to impasse a permissive subject of collective bargaining. Community Transit argues that PERC's order is invalid for three reasons: (1) PERC misinterpreted or misapplied the law, (2) PERC exceeded its statutory authority, and (3) PERC's order was arbitrary and capricious. Based on PERC's earlier, unchallenged conclusion that the provision at issue was a waiver clause, PERC properly concluded that the provision was a permissive subject of bargaining and

Community Transit committed an unfair labor practice by insisting to impasse on a permissive subject of bargaining. Accordingly, we affirm.

## FACTS AND LEGAL BACKGROUND

Amalgamated Transit Union, Local 1576 (Amalgamated), represents bus drivers and other transit workers employed by Community Transit.[1] From 1979 to 2007, Community Transit and Amalgamated executed a series of collective bargaining agreements. Among their provisions, the parties' collective bargaining agreements have included (1) a management rights clause,[2] (2) procedures for grievances filed either by the union or by an individual employee, and (3) a provision known as "Section 18.2." Section 18.2 applies when, during the life of the collective bargaining agreement, Community Transit changes the employee rules, including standard operating procedures and the performance code.

In 1997, Amalgamated brought an unfair labor practices complaint against Community Transit alleging that Community Transit unilaterally made changes to mandatory subjects of bargaining.[3] *Amalgamated Transit Union, Local 1576 v. Cmty. Transit*, No. 13219-U-97-3216, 1998 WL 1978452, at *1 (Wash. Pub. Emp't Relations Comm'n July 23, 1998). In a 1998 order dismissing the complaint, PERC ruled that under Section 18.2, Amalgamated waived its right to bargain Community Transit's changes to the employee rules during the life of the contract.

---

[1] The bargaining unit includes the following job classifications: coach operators, dispatchers, instructors, customer information specialists, sales and distribution specialists, facility maintenance leads, workers, journey workers, and internal security officers.

[2] A management rights clause is generally a clause that allows management to maintain control over decisions with respect to the operation and management of the organization. *See Pasco Police Officers' Ass'n v. City of Pasco*, 132 Wn.2d 450, 455-56, 938 P.2d 827 (1997).

[3] In the predecessor agreement considered by PERC in 1998, the Section 18.2 language was found in Section 19.2. Otherwise, the language is exactly the same.

*Amalgamated*, 1998 WL 1978452, at *6. Therefore, the 1998 PERC decision defined Section 18.2 as a waiver clause. Neither party appealed PERC's 1998 decision interpreting the identical language at issue here.

Years later, Community Transit and Amalgamated attempted to negotiate a successor to the collective bargaining agreement that expired December 31, 2007. During negotiations, Amalgamated sought to revise Section 18.2. For its part, Community Transit sought to retain the Section 18.2 language without amendments. A mediator ultimately found the parties reached an impasse on Section 18.2 and certified the issue to interest arbitration.

Amalgamated filed an unfair labor practice complaint, alleging that Section 18.2 is a permissive subject of bargaining and that Community Transit committed an unfair labor practice because it insisted to impasse on a permissive subject of bargaining. After convening a hearing on the complaint, a hearing examiner entered findings of fact and conclusions of law relying on the earlier interpretation of Section 18.2 and, thus, determining that Section 18.2 was a permissive subject of bargaining. Accordingly, the hearing examiner decided that Community Transit committed an unfair labor practice by insisting to impasse on a permissive subject of bargaining.

Community Transit appealed the hearing examiner's decision to PERC. PERC affirmed, adopting the hearing examiner's findings of fact and conclusions of law. In affirming and adopting the hearing examiner's order, PERC explained that Community Transit was bound by the previous interpretation of Section 18.2 as a waiver provision and that it could not now argue it was a managerial rights provision. Therefore, an earlier decision, *Whatcom County Deputy Sheriff's Guild v. Whatcom County*, No. 15383-U-00-3889, 2004 WL 725698 (Wash. Pub. Emp't Relations Comm'n Feb. 11, 2004), controlled the outcome rather than the balancing test in

3

*International Ass'n of Fire Fighters, Local Union 1052 v. Public Employment Relations Commission*, 113 Wn.2d 197, 203, 778 P.2d 32 (1989), which is used to determine whether a hybrid provision is primarily concerned with mandatory or permissive subjects of bargaining. Because waiver provisions are permissive subjects of bargaining under *Whatcom County*, PERC concluded that the hearing examiner properly decided that Community Transit committed an unfair labor practice by insisting to impasse on a permissive subject of bargaining.

Community Transit then petitioned for judicial review of PERC's order.[4] The superior court denied Community Transit's petition and affirmed PERC's order. Community Transit now appeals to this court.[5]

## ANALYSIS

Community Transit argues that PERC's order is invalid. First, Community Transit argues that PERC misapplied the law by (1) failing to engage in the balancing test set out in *Fire Fighters*, 113 Wn.2d at 203; and (2) determining that Section 18.2 is a permissive subject of bargaining. Second, Community Transit argues that PERC exceeded its statutory authority by creating a novel unfair labor practice. Third, Community Transit argues that PERC's order was arbitrary and capricious because it summarily determined that Section 18.2 was a permissive subject of bargaining. We disagree.

The Administrative Procedure Act (APA), ch. 34.05 RCW, governs this court's review of PERC's order in an unfair labor practice case. RCW 41.56.165; *Pasco Police Officers' Ass'n v. City of Pasco*, 132 Wn.2d 450, 458, 938 P.2d 827 (1997). Under the APA, the party challenging

---

[4] PERC chose not to appear in the superior court or defend its order on judicial review.

[5] In support of Community Transit's argument, the Washington State Association of Municipal Attorneys filed a brief as amicus curiae.

4

the agency's action bears the burden of demonstrating its invalidity. RCW 34.05.570(1)(a). There are nine circumstances under which we may grant relief from an agency order, including (1) the order is outside the agency's statutory authority, (2) the agency has erroneously interpreted or applied the law, and (3) the order is arbitrary and capricious. RCW 34.05.570(3)(b), (d), (i). When reviewing agency action under the APA, we sit in the same position as the superior court and apply the APA standards to the record before the agency. *Mader v. Health Care Auth.*, 149 Wn.2d 458, 470, 70 P.3d 931 (2003). Accordingly, we review PERC's order, not the decision of the superior court or the hearing examiner. *City of Vancouver v. Pub. Emp't Relations Comm'n*, 107 Wn. App. 694, 703, 33 P.3d 74 (2001), *review denied*, 145 Wn.2d 1021 (2002).

We review PERC's conclusions of law de novo and may substitute our interpretation of the law for that of PERC. *Pasco Police*, 132 Wn.2d at 458. At the same time, we give "due deference" to an administrative agency on matters falling within its area of expertise. *Port of Seattle v. Pollution Control Hearings Bd.*, 151 Wn.2d 568, 595, 90 P.3d 659 (2004). PERC has expertise in labor relations. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 319, 96 P.3d 957 (2004). Therefore, PERC's expertise in labor relations deserves the due deference of a reviewing court. *See Pub. Emp't Relations Comm'n v. City of Kennewick*, 99 Wn.2d 832, 842, 664 P.2d 1240 (1983).

Community Transit argues that PERC erroneously interpreted or applied the law because (1) PERC failed to conduct the balancing test adopted in *Fire Fighters*, and (2) PERC concluded that Section 18.2 was a permissive subject of bargaining. We disagree. Here, the *Fire Fighters* balancing test would be necessary if Section 18.2 were a management rights clause; however, because PERC already determined that Section 18.2 is a waiver clause, PERC appropriately

applied its earlier decision in *Whatcom County* to conclude that Section 18.2 is a permissive subject of bargaining.

Washington law distinguishes between mandatory and permissive subjects of collective bargaining. *See, e.g., Yakima County v. Yakima County Law Enforcement Officers' Guild*, 174 Wn. App. 171, 181, 297 P.3d 745, *review denied*, 178 Wn.2d 1012 (2013). On mandatory subjects, the parties must bargain in good faith; if they reach an impasse on a mandatory subject, their dispute will be resolved through interest arbitration. *Pasco Police*, 132 Wn.2d at 460-61. In contrast, the parties may bargain on permissive subjects, but they are not required to do so. *Klauder v. San Juan County Deputy Sheriffs' Guild*, 107 Wn.2d 338, 342, 728 P.2d 1044 (1986). Insisting to impasse on a provision addressing a permissive subject is an unfair labor practice. *Klauder*, 107 Wn.2d at 342. The distinction between mandatory and permissive subjects of collective bargaining derives from the definition of "collective bargaining" in RCW 41.56.030(4). *See Fire Fighters*, 113 Wn.2d at 200. That definition imposes a mutual obligation on a public employer and a union to execute a collective bargaining agreement that governs "grievance procedures and . . . personnel matters, including wages, hours and working conditions." RCW 41.56.030(4).

Accordingly, grievance procedures and "matters of direct concern to employees," such as wages, hours, and working conditions, are categorized as mandatory subjects of collective bargaining. *Fire Fighters*, 113 Wn.2d at 200; *City of Pasco*, 119 Wn.2d at 512. In contrast, other subjects are permissive subjects on which the parties are not required to bargain. *Klauder*, 107 Wn.2d at 341-42; *see* RCW 41.56.030(4). Permissive subjects may include managerial decisions with attenuated effects on personnel matters; the exercise of managerial or union prerogatives; and the procedures used to establish contract terms on wages, hours, and working

conditions. *Fire Fighters*, 113 Wn.2d at 200; *Klauder*, 107 Wn.2d at 341-42. Whether a proposed contractual provision addresses a mandatory or permissive subject of bargaining depends on the facts of each case. *Fire Fighters*, 113 Wn.2d at 203.

As an initial matter, Community Transit argues that PERC misapplied the law because *Fire Fighters* has created a balancing test that must be used whenever PERC determines whether a provision is a mandatory or permissive subject of bargaining. However, *Fire Fighters* requires that PERC engage in a case-by-case analysis to determine whether a proposed contractual provision addresses a mandatory or permissive subject of bargaining. 113 Wn.2d at 203. But PERC is not required to engage in the balancing test every time it is tasked with determining whether an issue is a mandatory or permissive subject of bargaining. *See Pasco Police*, 132 Wn.2d at 459-68 (making no mention of the balancing test and deciding that a provision's subject was mandatory, not permissive). Specifically, there are some issues that are mandatory or permissive as a matter of law; for example, employee wages, hours, and working conditions are mandatory subjects of bargaining. PERC would not be required to apply the *Fire Fighters* balancing test to a provision that deals exclusively with employee wages, hours, or working conditions because that provision must be a mandatory subject of bargaining. The balancing test is meant to be used when a provision addresses both a mandatory subject of bargaining (e.g., wages, hours, and working conditions) and permissive subjects of bargaining (i.e., managerial prerogatives). *See Fire Fighters*, 113 Wn.2d at 203. Section 18.2 is exclusively a waiver provision and does not address *both* mandatory and permissive subjects, so there is nothing to balance and the balancing test is not appropriate. Accordingly, PERC did not misapply the law when it did not conduct the *Fire Fighters* balancing test.

The parties also dispute whether Section 18.2 addresses a mandatory or permissive subject of bargaining. Section 18.2 states,

> [Community Transit] agrees to notify [Amalgamated] of any changes in the Employee's Rule and Regulations, including Standard Operating Procedures (SOP's) and Performance Code, affecting employees in the Bargaining Unit. The grievance procedure [established in Article 14] shall not apply to any matters covered by this section, except as to [Community Transit's] administration of such provisions resulting in employee appeal of his/her discharge or suspension only as per Article 14 of this Labor Agreement.

Administrative Record at 132.

As explained above, PERC had already characterized Section 18.2 as a waiver provision. *Amalgamated*, 1998 WL 1978452, at *6. As PERC correctly noted in its decision here, its earlier decision governs the characterization of Section 18.2 as a waiver provision. PERC's 1998 decision did not directly address whether Section 18.2 was a mandatory or permissive subject of bargaining. Therefore, here, PERC was required to determine whether the waiver provision in Section 18.2 was a mandatory or permissive subject of bargaining.

No Washington court has decided whether a provision waiving a party's statutory bargaining rights is mandatory or permissive. *See Pasco Police*, 132 Wn.2d at 463. But in 2004, PERC concluded that "a broad waiver of statutory [bargaining] rights" is a permissive subject of bargaining. *Whatcom County*, 2004 WL 725698, at *7; *accord Int'l Ass'n of Fire Fighters, Local 1604 v. City of Bellevue*, No. 23828-U-11-6082, 2013 WL 3784086, at *6 (Wash. Pub. Emp't Relations Comm'n July 12, 2013) (submitted as additional authority by Amalgamated). In light of PERC's prior decision that Section 18.2 waived Amalgamated's statutory right to bargain changes to the employee rules to impasse, it follows that Section 18.2 is a broad waiver and therefore a permissive subject of bargaining. *See Whatcom County*, 2004 WL 725698, at *7.

Attempting to distinguish Section 18.2 from the broad waiver in *Whatcom County*, Community Transit argues on two grounds that Section 18.2 is not broad. First, the scope of Section 18.2 is broad. In *Whatcom County*, a broad waiver allowed the employer to adopt new rules on any subject on which the parties' collective bargaining agreement was silent. 2004 WL 725698, at *10-11. Community Transit asserts that, in contrast, Section 18.2 merely waives Amalgamated's right to bargain "subjects specifically listed in [Section] 18.2," i.e., changes to the employee rules, standard operating procedures, and performance code. Br. of Appellant at 40. But Community Transit's assertion belies the parties' history and the record. In the course of 123 pages, the standard operating procedures govern practically every aspect of working conditions. Section 18.2 is unquestionably broad.

Second, Community Transit attempts to distinguish Section 18.2 from the broad "procedural" waiver in *Whatcom County*. This contention is also unpersuasive. Even the broad waiver in *Whatcom County* preserved an opportunity for the union to contest the employer's changes to working conditions during the life of the contract by allowing the union to object to the changes and providing for arbitration of any unresolved objections. 2004 WL 725698, at *10. But Section 18.2 excludes Amalgamated from the process to an even greater degree: it eliminates any real opportunity for Amalgamated to contest Community Transit's changes to the employee rules. Like the waiver in *Whatcom County*, Section 18.2 allows Community Transit to make changes to rules and procedures without having to deal with the union.

Although it undoubtedly has an indirect impact, a broad waiver of Amalgamated's right to bargain over changes to the employee rules is not a matter of direct concern to employees. Instead, as PERC explained in *Whatcom County*, this broad waiver addresses "the relationship between the employer and union, by enabling the employer to change work rules without having

to deal with the union." 2004 WL 725698, at *4. Because this broad waiver of Amalgamated's right to bargain does not *directly* concern working conditions, Section 18.2 addresses a permissive, rather than a mandatory, subject of bargaining. *Whatcom County*, 2004 WL 725698, at *4; *see Fire Fighters*, 113 Wn.2d at 200. Therefore, PERC's order is not based on an erroneous application of the law.

Community Transit's remaining arguments rest on assumptions which we have already held meritless. Community Transit argues that PERC exceeded its statutory authority by creating a new unfair labor practice; namely, insisting to impasse over a mandatory subject of bargaining. *See* RCW 41.56.140; *Pasco Police*, 132 Wn.2d at 460-61. However, for the reasons explained above, PERC correctly determined that Section 18.2 is a permissive subject of bargaining. Accordingly, Community Transit's argument must fail.

Community Transit also argues that PERC's order was arbitrary and capricious because PERC failed to apply the *Fire Fighters* balancing test. However, the *Fire Fighters* balancing test was superfluous in this case. PERC made a well reasoned decision to apply its earlier decision dealing with the subject matter. Therefore, it also follows that PERC's order is not arbitrary and capricious. *Port of Seattle*, 151 Wn.2d at 589 (An agency order is not arbitrary and capricious if the agency acted honestly and upon due consideration.).

No. 43783-0-II

Community Transit has not met its burden to show that PERC misinterpreted or misapplied the law, PERC acted outside its statutory authority, or PERC's order was arbitrary and capricious. RCW 34.05.570(1)(a), (3). Accordingly, we affirm PERC's order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

QUINN-BRINTNALL, J.

We concur:

WORSWICK, C.J.

MAXA, J.