107 Wn.2d 338 (1986)
728 P.2d 1044
JAMES KLAUDER, ET AL, Respondents,
v.
SAN JUAN COUNTY DEPUTY SHERIFFS' GUILD, Appellant.
No. 51985-4.
The Supreme Court of Washington, En Banc.
December 4, 1986.
*339 Oles, Morrison, Rinker, Stanislaw & Ashbaugh, by William G. Jeffery, for appellant.
Perkins Coie, by J. David Andrews, Nancy Williams, and Michael F. Mogan, for respondents.
CALLOW, J.
This direct appeal from the trial court presents issues relating to interest arbitration. Interest arbitration is arbitration pertaining to wage and work condition provisions in a future contract while grievance arbitration pertains to the interpretation of the provisions of an existing agreement to settle a specific grievance.
An interest arbitration clause provides for arbitration of a new collective bargaining agreement. A grievance or rights arbitration clause provides for arbitration of disputes arising from an existing collective bargaining agreement.
Hotel & Restaurant Employees, Local 703 v. Williams, 752 F.2d 1476, 1478 n. 1 (9th Cir.1985). The parties are James Klauder, Tom Cowan and Eleanor Howard, the Commissioners of San Juan County, hereinafter referred to as the Commissioners or the County, and the San Juan County Deputy Sheriffs' Guild representing the deputy sheriffs and dispatchers in the San Juan County Sheriff's Office, hereinafter referred to as the Guild. The trial court granted the Commissioners' motion for summary judgment asking that the interest arbitration provision of the collective bargaining agreement between the parties be concluded. We affirm the trial court holding that the County is not bound by the decree of an arbitrator requiring the continuation in perpetuity of an interest arbitration provision in a contract.
The issue is whether a provision in a collective bargaining agreement which read as follows,
that all disputes regarding a new contract and wage scales to become effective at the expiration of this contract, which cannot be settled by the parties through negotiations, shall be determined by arbitration ...
1981-82 Agreement, article 18, can be perpetuated over the protest of the Commissioners.
*340 In 1980, the Guild and the Commissioners entered into a collective bargaining agreement. That agreement included the interest arbitration provision, which authorized either party to submit disputed issues in the ensuing contract to an arbitrator for final determination. The arbitration procedure agreed to in the 1980 contract was used during the collective bargaining negotiations for the 1981 contract. The parties did not contest the arbitrator's decision to preserve the interest arbitration provision in force for the succeeding year. In the negotiating session for the 1982 contract, the parties submitted several issues to arbitration. The County at that time requested that the interest arbitration provision not be embodied in the ensuing contract. The arbitrator, however, extended the interest arbitration provision in the 1982 contract, remarking that the Commissioners had agreed to the clause as reasonable "only three years ago." On November 4, 1983, the Commissioners commenced this action seeking to invalidate the arbitrator's decision as to the continuation of the interest arbitration provision.
The County is a public employer and the Guild is a bargaining representative within the meaning of the Washington Public Employees' Collective Bargaining Act. RCW 41.56.030(1), (3). The purpose of the Public Employees' Collective Bargaining Act is declared by RCW 41.56.010 as follows:
The intent and purpose of this chapter is to promote the continued improvement of the relationship between public employers and their employees by providing a uniform basis for implementing the right of public employees to join labor organizations of their own choosing and to be represented by such organizations in matters concerning their employment relations with public employers.
Collective bargaining is defined in RCW 41.56.030(4) as follows:
"Collective bargaining" means the performance of the mutual obligations of the public employer and the exclusive bargaining representative to meet at reasonable *341 times, to confer and negotiate in good faith, and to execute a written agreement with respect to grievance procedures and collective negotiations on personnel matters, including wages, hours and working conditions, which may be peculiar to an appropriate bargaining unit of such public employer, except that by such obligation neither party shall be compelled to agree to a proposal or be required to make a concession unless otherwise provided in this chapter.
[1] This parallels the bargaining duty established under section 8(d) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158, which "defines a limited category of issues subject to compulsory bargaining." Fibreboard Paper Prods. Corp. v. NLRB, 379 U.S. 203, 220, 13 L.Ed.2d 233, 85 S.Ct. 398, 6 A.L.R.3d 1130 (1964) (Stewart, J., concurring). A comparison of the similar effect of the federal and state definitions of collective bargaining is helpful as is an examination of the federal cases dealing with the subject. NLRB v. Sheet Metal Workers, Local 38, 575 F.2d 394, 397 (2d Cir.1978) quotes 29 U.S.C. § 158(d) as follows:
Collective bargaining
is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party....
and then observes
A party violates the duty to bargain collectively if it insists, as a precondition to reaching an agreement, on inclusion of a provision concerning a nonmandatory subject for bargaining, that is, a subject other than the mandatory issues of wages, hours, and other terms and conditions of employment.
Thus, in general those issues which deal with wages, hours and other terms and conditions of employment are subjects about which the parties must bargain and are categorized as "mandatory" subjects. On the other hand, the parties *342 need not bargain on other matters which are referred to as permissive or nonmandatory issues including those that deal with the procedures by which wages, hours and the other terms and conditions of employment are established. The category of permissive issues includes interest arbitration. Thus, the County's scope of duty to bargain under RCW 41.56 and/or the NLRA does not extend to interest arbitration which is a permissive (nonmandatory) subject. Hotel & Restaurant Employees, Local 703 v. Williams, 752 F.2d 1476, 1479 (9th Cir.1985). See also Tukwila v. United Steelworkers, Local 911, Pub. Empl. Relations Comm'n Dec. 1975-PECB (1985).
Interest arbitration is to be differentiated from grievance arbitration. Interest arbitration deals with the establishment of the relationship and agreements between the parties, while grievance arbitration concerns the interpretation of an existing agreement and the reconciliation of disputes between the parties. Interest arbitration is a methodology which parties may agree to use, absent a negotiated settlement, to determine what working conditions will be. It is a means to an end rather than a benefit or condition. Tukwila, at 13. As a nonmandatory subject, the interest arbitration proposal was extrinsic to the applicable duty to bargain. It is an unfair labor practice to bargain to impasse over a nonmandatory subject. Sheet Metal Workers, Local 252 v. Standard Sheet Metal, Inc., 699 F.2d 481 (9th Cir.1983).
The authority of the interest arbitrator is limited and cannot be extended to the establishment of future contracts over the objection of the party. See, e.g., Hotel & Restaurant Employees, Local 703 v. Williams, supra at 1479; Yakima v. Yakima Police Patrolman's Ass'n, Pub. Empl. Relations Comm'n Dec. 1130-PECB (1981); Wenatchee v. Wenatchee Police Guild, Pub. Empl. Relations Comm'n Dec. 780-PECB (1980). The duty to bargain and the authority of an interest arbitrator are concepts which must not be commingled as they are not responsibilities which overlap.

*343 It is an important element of national labor policy that a party need not bargain, and need not agree, concerning nonmandatory issues. The importance of preserving parties' freedom to exclude nonmandatory subjects from labor agreements is acknowledged by the rule that "[b]y once bargaining and agreeing on a permissive subject, the parties ... do not make the subject a mandatory topic of future bargaining." Thus, as applied to nonmandatory subjects, an interest arbitration provision is contrary to national labor policy because it deprives the parties of their right to insist on excluding nonmandatory subjects from the collective bargaining agreement.

(Citations omitted. Italics ours.) NLRB v. Sheet Metal Workers, Local 38, 575 F.2d 394, 398-99 (2d Cir.1978). The Ninth Circuit has expressly endorsed a similar analysis:
[The collective bargaining agreement] would be invalid because arbitration can only be required for mandatory bargaining subjects, and an interest arbitration clause is a non-mandatory subject.

(Italics ours.) Williams, at 1479.
The possibility of the perpetuation of interest arbitration presents a number of public policy concerns: First, a party, having once agreed to the provision, could find itself locked into the procedure for as long as the bargaining relationship endures. This could work to the unfair benefit of one party if the arbitrators were favoring its position and to the extreme detriment of the other. To lock either labor or management to unfriendly arbitrators for negotiation after negotiation would be intolerable. Second, the possibility exists that the tendency of arbitrators would be to continue including such an interest arbitration provision for the perpetuation of their own interests and not for the benefit of the parties. Third, the existence of a self-perpetuating system could lessen the incentives to bargaining in good faith toward an agreement since the parties would have the availability of arbitration on all matters and could rely upon arbitration to resolve differences when the parties should have resolved them themselves. As noted in NLRB v. Columbus Printing Pressmen, Union 252, 543 F.2d 1161, *344 1170 (5th Cir.1976):
However, the perpetuation of contract arbitration clauses in successive contracts may well serve to increase industrial unrest. Under contract arbitration, an outsider imposes contract terms, perhaps, as here, unguided by any agreed-upon standards. In these circumstances, a disappointed party can readily believe that the arbitrator lacked appreciation of its needs or failed to apply appropriate standards, for example, "fair wages." This is particularly the case where the disappointed party was opposed to having a contract arbitration clause in the bargaining agreement, but felt "stuck with it" upon an arbitrator's award that the term be continued. The result is that a party's dissatisfaction with an award may be aggravated by doubts about its legitimacy.
Fourth, the possibility that one party will feel aggrieved by a contract arbitration award increases as the parties move from contract to contract. Columbus Pressmen.
Interest arbitration provisions must terminate unless both parties agree to the continuation. An interest arbitration provision, because it is a nonmandatory subject of bargaining, must be a product of renewed mutual consent. Sheet Metal Workers, Local 420 v. Huggins Sheet Metal, Inc., 752 F.2d 1473, 1475 (9th Cir.1985). Such a provision, when imposed by an arbitrator over the objection of one of the parties, is unenforceable. Sheet Metal Workers, Local 14 v. Aldrich Air Conditioning, Inc., 717 F.2d 456, 459 (8th Cir.1983); NLRB v. Sheet Metal Workers, Local 38, 575 F.2d at 399; Milwaukee Newspaper & Graphic Communications, Local 23 v. Newspapers, Inc., 586 F.2d 19, 21-22 (7th Cir.1978); NLRB v. Columbus Printing Pressmen, Union 252, supra at 1169-70.
Although not obligated to do so, the County expressly agreed to the interest arbitration method of dispute resolution in written collective bargaining agreements for 1980 and 1981-82. In 1982, however, during the negotiations for a new agreement, the County voiced its opposition to perpetuation of the mechanism for the resolution of future contract disputes. The County then submitted to interest *345 arbitration in 1983, but made clear its objection to the arbitrator's authority to perpetuate that procedure. In including such a clause over the County's objection, the arbitrator exceeded his authority. The County had no duty to discuss, or bargain concerning continuance of the interest arbitration clause. Its willingness to contract for the procedure in the past cannot alter its statutory rights. See NLRB v. Greensboro Printing Pressmen, Union 319, 549 F.2d 308, 309 (4th Cir.1977) (no duty to bargain over interest arbitration despite its presence in labor agreement for over 30 years); NLRB v. Columbus Printing Pressmen, Union 252, supra at 1171.
In perpetuating article 18 against the County's wishes, the arbitrator's decision was inconsistent with state and federal labor policy and properly set aside by the trial court. See Kennewick Educ. Ass'n v. Kennewick Sch. Dist. 17, 35 Wn. App. 280, 282, 666 P.2d 928 (1983). An agreement which would authorize perpetuation of an interest arbitration provision is invalid.
[2] Furthermore, the claimed oral agreement to perpetuate interest arbitration cannot be upheld. Public employers cannot be bound by oral collective bargaining agreements under RCW 41.56.030(4). Such an agreement would violate the statute of frauds. State ex rel. Bain v. Clallam Cy. Bd. of Cy. Comm'rs, 77 Wn.2d 542, 547-48, 463 P.2d 617 (1970) held that an oral agreement was unenforceable by reason of the Public Employees' Collective Bargaining Act's requirement of written agreements, stating:
[RCW 41.56.030(4)] uses language designed to show a legislative intention that there be no oral collective bargaining agreements.... Any understanding arrived at in collective bargaining negotiations necessarily, therefore, remains preliminary ... until merged into a written agreement. Obviously, the legislature in authorizing and in empowering county commissioners to enter into written agreements did so to avoid the very thing that happened here: conducting county business privately ... from which the public could be excluded, possibly binding the county and its treasury to contractual obligations *346 established only by parol evidence, and leaving the county dependent on the memory and recollection of the negotiators.

(Italics ours.) The oral understanding that is claimed to have existed in 1980 cannot be asserted as a matter of law. It is void under the statute.
The trial court is affirmed.
DOLLIVER, C.J., BRACHTENBACH, DORE, PEARSON, ANDERSEN, GOODLOE, and DURHAM, JJ., and SHELLAN, J. Pro Tem., concur.