[No. 20893-8-II.   Division Two.   November 7, 1997.]
PATROL LIEUTENANTS ASSOCIATION, *Respondent,* v.
ANNETTE M. SANDBERG, ET AL., *Appellants.*

*Christine O. Gregoire, Attorney General,* and *Carol A. Smith-Merkulov, Assistant,* for appellants.

*Timothy J. Lowenberg* of *Lowenberg, Lopez & Hansen,* for respondent.

SEINFELD, J. — The Washington State Patrol Lieutenants Association brought this declaratory judgment action to establish its statutory right to engage in collective bargaining over wages and wage-related matters. The Washington State Patrol and Annette Sandberg, its chief, opposed the Association's position, contending that RCW 41.56.030(4) prohibits collective bargaining as to wage-related matters. The trial court granted summary judgment to the Association. We conclude that the statute excludes wage-related topics from mandatory bargaining, but does not prohibit the parties from negotiating over wages as a permissive topic. Thus, we affirm.

## FACTS

In 1987, the Legislature granted employees of the Washington State Patrol the right to engage in collective bargaining. RCW 41.56.460. In July 1994, the Washington State Patrol Lieutenants Association (the Association) was certified as the labor representative for the State Patrol's

lieutenants and captains. The Association then entered into collective bargaining with the State Patrol. The resulting contract, which took effect in 1995, contained numerous articles dealing with wage-related matters.

Subsequently, Annette Sandberg became chief of the Washington State Patrol. She refused to honor the wage-related articles in the contract, basing her position on the last sentence of RCW 41.56.030(4). That statute provides:

> "Collective bargaining" means the performance of the mutual obligations of the public employer and the exclusive bargaining representative to meet at reasonable times, to confer and negotiate in good faith, and to execute a written agreement with respect to grievance procedures and collective negotiations on personnel matters, including wages, hours and working conditions, which may be peculiar to an appropriate bargaining unit of such public employer, except that by such obligation neither party shall be compelled to agree to a proposal or be required to make a concession unless otherwise provided in this chapter. *In the case of the Washington state patrol, "collective bargaining" shall not include wages and wage-related matters.*

(Emphasis added.)

In response, Association members filed several grievances. The State Patrol processed some of these grievances through final internal review, but refused to submit any of them to binding arbitration, as required by the contract.

In December 1995, the Association filed a complaint for declaratory judgment and injunctive relief. It alleged that the contract provisions were lawful, Chief Sandberg had breached the contract, and her actions constituted wrongful and illegal acts for which the Association had no adequate remedy at law. Accordingly, the Association asked the court to declare that (1) the disputed contract articles were lawful and enforceable, (2) the grievances by Association members involved contract violations and were subject to the exclusive dispute resolution procedures as set forth in Article 17 of the collective bargaining contract,

and (3) Article 17 required the parties to submit the grievances to binding arbitration.

The State Patrol moved to dismiss and the Association moved for summary judgment. The trial court denied the State Patrol's motion, and granted summary judgment to the Association.

On appeal, the State Patrol argues that the trial court's ruling runs contrary to the plain meaning of RCW 41-.56.030(4) and that the Association's sole remedy is found in the contract's savings clause, which negates unenforceable provisions in the collective bargaining contract. The State Patrol also challenges the trial court's award of "anticipatory" attorney fees and costs.

## "COLLECTIVE BARGAINING" AS A TERM OF ART

The State Patrol contends that the contract provisions addressing wage-related matters are illegal and, therefore, unenforceable. The Association asserts that the law prohibits mandatory or obligatory bargaining on these issues, but allows for bargaining on a voluntary or permissive basis.

The Public Employees' Collective Bargaining Act (the Act), RCW 41.56, requires public employers to bargain collectively with the exclusive bargaining representative of their employees. *Peninsula Sch. Dist. No. 401 v. Public Sch. Employees*, 130 Wn.2d 401, 407, 924 P.2d 13 (1996). Collective bargaining, a statutory term of art, refers to the "mutual *obligation*[ ]" to execute a written agreement regarding certain topics. RCW 41.56.030(4) (emphasis added). It is an unfair labor practice to refuse to engage in collective bargaining. RCW 41.56.150(4). If the parties are unable to agree on certain matters and thus reach an impasse, the matter may proceed to the Public Employment Relations Commission and eventually to mediation and arbitration. RCW 41.56.440, .450.

The Act serves the remedial purpose of implementing the right of public employees to join and be represented

by labor organizations. *Peninsula Sch. Dist.*, 130 Wn.2d at 407; RCW 41.56.100. Therefore, courts must construe it liberally. Liberal construction requires this court to narrowly interpret any exception limiting its application. *Peninsula Sch. Dist.*, 130 Wn.2d at 407.

■ Washington courts interpreting the definition of "collective bargaining" in RCW 41.56.030(4), and federal courts interpreting a similar definition in the National Labor Relations Act, 29 U.S.C. § 158(d),[1] have identified three broad categories of issues related to collective bargaining: (1) mandatory issues, (2) permissive issues, and (3) illegal issues.[2] *Pasco Police Officers' Ass'n v. City of Pasco*, 132 Wn.2d 450, 460-61, 938 P.2d 827 (1997); *Hill-Rom Co. v. NLRB*, 957 F.2d 454, 457 (7th Cir. 1992). Generally, issues regarding " 'wages, hours and other terms and conditions of employment' " are " 'mandatory' " subjects over which the parties must bargain in good faith. *Pasco Police Officers' Ass'n*, 132 Wn.2d at 460 (quoting *Klauder v. San Juan County Deputy Sheriffs' Guild*, 107 Wn.2d 338, 341, 728 P.2d 1044 (1986)). In contrast, the parties may negotiate over "permissive" or "nonmandatory" subjects, but they are not obliged to do so. " '[T]he procedures by which wages, hours and the other terms and conditions of employment are established' " are typical permissive or nonmandatory topics. *Pasco Police Officers' Ass'n*, 132 Wn.2d at 460 (quoting *Klauder*, 107 Wn.2d at 341-42). The third category, illegal issues, includes mat-

---

[1] The National Labor Relations Act (NLRA), 29 U.S.C. § 158(d) (1995), provides in pertinent part:

> For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession. . . .

[2] When interpreting state labor acts that are similar to or based upon NLRA provisions, Washington courts consider federal decisions interpreting the NLRA to be persuasive, but not binding authority. *Pasco Police Officers' Ass'n v. City of Pasco*, 132 Wn.2d 450, 458, 938 P.2d 827 (1997).

ters that, because of a statutory or constitutional prohibition, the parties may not consider during the collective bargaining process. *Hill-Rom Co.*, 957 F.2d at 457.

When the Legislature granted State Patrol employees the right to engage in collective bargaining, it amended RCW 41.56.030(4) to add the following restriction on collective bargaining: "In the case of the Washington state patrol, 'collective bargaining' shall not include wages and wage-related matters." This case turns on the meaning of that sentence.

"Construction of a statute is a question of law which we review de novo under the error of law standard." *Waste Management of Seattle, Inc. v. Utilities & Transp. Comm'n*, 123 Wn.2d 621, 627, 869 P.2d 1034 (1994). " 'Statutes should receive a sensible construction, such as will effect the legislative intention, and, if possible, so as to avoid unjust or absurd consequences. A thing which is within the object, purpose and spirit of an enactment is as much within the act as if it were within the letter.' " *Johnson v. Tradewell Stores, Inc*, 95 Wn.2d 739, 743, 630 P.2d 441 (1981) (citations omitted) (quoting *Whitehead v. Department of Soc. & Health Servs.*, 92 Wn.2d 265, 269, 595 P.2d 926 (1979)).

Generally, this court construes a statute according to its plain language and gives effect to the legislative intent. *W.R.P. Lake Union Ltd. Partnership v. Exterior Servs., Inc.*, 85 Wn. App. 744, 749, 934 P.2d 722 (1997). We do so by construing statutory language in the context of the statute as a whole, rather than by looking at the phrase at issue in isolation. *In re Sehome Park Care Ctr., Inc.*, 127 Wn.2d 774, 778, 903 P.2d 443 (1995). We resort to rules of construction only when the statute is ambiguous. A statute is ambiguous if its language is susceptible of more than one meaning. *City of Yakima v. International Ass'n of Fire Fighters, Local 469*, 117 Wn.2d 655, 669-70, 818 P.2d 1076 (1991).

RCW 41.56.030(4) defines "collective bargaining"

by identifying issues that the parties must address in good faith at the bargaining table, i.e., "grievance procedures and collective negotiations on personnel matters, including wages, hours and working conditions." When we read the last sentence of .030(4) in isolation, it suggests that the Legislature intended to prohibit all negotiations on wage-related matters. But when we read the last sentence in the context of the entire subsection and in light of the requirement that we construe exceptions to representation narrowly, we see that it merely removes wage-related matters from the preceding definition of collective bargaining. That definition deals with mandatory topics. The new sentence does not address permissive negotiating topics.

We agree with the State Patrol that the words "shall not" are prohibitory, not permissive. But the meaning of "shall not" does not decide the question before us. We still must determine what the statute prohibits. Does it simply exclude wages from the list of mandatory bargaining matters that the parties must agree upon to avoid impasse and mandatory arbitration? Or does the statute go further and prohibit the parties from voluntarily discussing and reaching agreement as to wage-related terms? As we stated above, we believe that the Legislature intended the former.

Nor is the legislative history that the State Patrol cites helpful to its position. The Patrol seeks to buttress its argument with the following language contained in the 1987 Final Legislative Report: "Wages and wage-related matters are excluded from the definition of collective bargaining in the case of the State Patrol." FIFTIETH WASHINGTON LEGISLATURE, SSB 5312, at 194 (1987). But the quoted sentence reinforces our conclusion that the Legislature intended to exclude wage-related matters from the *definition* of collective bargaining, not from the process of actual bargaining. The legislative history indicates a legislative intent to exclude wages as one of those topics to agree upon as part of the collective bargaining process.

The State Patrol also cites RCW 41.56.475(1) as evidence

of legislative intent. That statute provides that mediators shall not consider wage-related matters. But matters come before a mediator only after declaration of an impasse. RCW 41.56.440. And an impasse only occurs when the parties are unable to reach agreement regarding mandatory issues. *Sheet Metal Workers Int'l Ass'n Local Union No. 420 v. Huggins Sheet Metal, Inc.*, 752 F.2d 1473, 1475 (9th Cir. 1985). It is an unfair labor practice to pursue a nonmandatory subject of bargaining to impasse. *City of Pasco v. Public Employment Relations Comm'n*, 119 Wn.2d 504, 506, 833 P.2d 381 (1992). Thus, by prohibiting mediators from considering wage-related issues, the Legislature emphasized that those issues are not mandatory subjects of collective bargaining. At the same time it acknowledged that those issues could be the topic of bargaining.

The trial court correctly determined that wages and wage-related matters are a permissive topic under RCW 41.56.030(4). Consequently, the State Patrol and its employees acted in accordance with the statute when they bargained and agreed as to those matters.

## Binding Arbitration

Because we hold that the wage-related provisions of the contract do not violate the statute, we need not address the State Patrol's argument that it need not submit to the contract's four-step grievance procedure.

## Anticipatory Attorney Fees And Costs

Finally, the State Patrol contends that the trial court erred by "anticipatorily awarding" the Association attorney fees in the event future enforcement proceedings are necessary. This claim is not ripe for appellate review.

In its complaint, the Association asked for injunctive relief and an award of attorney fees and costs. The trial court found that an injunction was not necessary because entry of the judgment in favor of the Association should resolve the matter. Nonetheless, the trial court included the following language in its summary judgment order:

If injunctive relief is necessary and is later granted in order to enforce the Declaratory Judgment entered herein, this court will award Plaintiff reasonable attorney's fees and costs for the expenses Plaintiff has incurred to date plus additional reasonable attorney's fees and costs for any such future enforcement proceedings . . . .

When signing the order, the trial court made the following observations:

I'm going to reserve personal jurisdiction of this case at this time so that when the matter does come back — or I should say "if" the matter comes back — then I will have in mind what I intended, if not a perfect recollection of what I said, when it comes to the issue of attorneys' fees beyond what has been awarded here in the summary judgment order.

So at this time, I would approve this order, reserving in the State Patrol, if necessary, the right to argue further the issue of the propriety of attorneys' fees in the sense of reconsideration. But it is my recollection that when we got to the enforcement issue that I expected a law enforcement agency to enforce that law as decreed either by the legislature or by a court of competent jurisdiction, and, if they didn't, then I would be rather inclined to assess a party who prevailed over it in such an enforcement attempt, if necessary, to seek judicial review its costs and attorneys' fees.

That was my state of mind at the time, but I would be open to hearing further argument on the nuances of that if and when the situation may present itself. so on that basis, I have signed what I believe is the proposed original order submitted by the plaintiff.

Based on the order and the trial court's comments from the bench, it is clear that the trial court did not intend its ruling regarding attorney fees to be final.

An appellate court need not resolve an issue of law absent a justiciable controversy. *Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 815, 514 P.2d 137 (1973). A justiciable controversy exists when there is:

(1) . . . an actual, present and existing dispute, or the mature

seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive.

*Ripley*, 82 Wn.2d at 815. The dispute here fails to satisfy at least two of these requirements.

First, the controversy is, at most, speculative. The trial court stated in its written and oral rulings that it would consider awarding attorney fees only *if* the Association had to bring an action to enforce the judgment in the future. There is no evidence that the Association has or intends to file such an action. Second, the judicial determination is not final and conclusive. The trial court acknowledged that, in the event the Association brought an enforcement action, it would entertain further arguments from the State Patrol regarding attorney fees. Given the conditional and speculative nature of the trial court's ruling, the State Patrol's challenge is not ripe for review.

We affirm.

HOUGHTON, C.J., and HUNT, J., concur.

Review denied at 135 Wn.2d 1005 (1998).