FILED
COURT OF APPEALS
DIVISION II

2013 MAR 19 AM 8: 39

STATE OF WASHINGTON

BY_____
          DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| YAKIMA COUNTY and PUBLIC EMPLOYMENT RELATIONS COMMISSION,<br>Respondents,<br><br>v.<br><br>YAKIMA COUNTY LAW ENFORCEMENT OFFICERS' GUILD,<br>Appellant. | No. 42697-8-II<br><br>PUBLISHED OPINION |

VAN DEREN, J. — Following a failed mediation over terms of a collective bargaining agreement (CBA), the Yakima County Law Enforcement Officers' Guild (Guild) and Yakima County certified disputed issues to interest arbitration.[1] Before the interest arbitration took place, Yakima County (County) filed an unfair labor practice complaint with the Public Employment Relations Commission (PERC), alleging that the Guild had wrongfully argued permissive subjects of bargaining to impasse[2] and certified those permissive subjects of bargaining to interest arbitration. The County unsuccessfully moved for summary judgment before the

---

[1] "Interest arbitration is a process whereby, if the union and the employer cannot agree on a new contract during collective bargaining, an arbitration panel will be formed to resolve any disputes over the terms of the new contract." *Snohomish County Pub. Transp. Benefit Area v. Pub. Emp't Relations Comm'n*, No. 42435-5, 2013 WL 506559, at *2 (Wash. Ct. App. February 12, 2013) (citing RCW 41.56.450).

[2] If parties to a CBA are unable to agree on the terms of a subject of bargaining, they are said to have reached an "impasse."

No. 42697-8-II

hearing examiner, but the PERC reversed the hearing examiner, finding that the Guild's proposals regarding release time were permissive, not mandatory, subjects of bargaining and interest arbitration. The superior court affirmed the PERC's decision and issued its own order on the disputed issues.[3]

The Guild appeals, asserting that the two contested proposals are mandatory subjects of bargaining and are subject to interest arbitration following impasse. The proposals involved paid release time for (1) Guild representatives to attend "state or national meetings or conferences concerning training in labor issues concerning administration of the [CBA] or law enforcement" and (2) Guild officers to "conduct or participate in general membership and/or Guild board meetings concerning collective bargaining or enforcement of the [CBA]." Administrative Record (AR) at 63 (underline omitted). The Guild also challenges the PERC's order prohibiting the Guild from future bargaining to impasse on release time for meetings and travel, and it asserts that the superior court exceeded its authority when it issued its separate order in this administrative review matter.

We affirm in part and reverse in part, holding that (1) the Guild's release time proposal regarding conference attendance was a permissive subject of bargaining not properly certified to interest arbitration; but (2) the Guild's release time proposal for Guild officers' attendance at Guild membership and board meetings about collective bargaining issues and enforcement of the CBA were properly certified to interest arbitration. We also vacate the PERC's order prohibiting the Guild from bargaining release time proposals to impasse in the future, vacate the superior

---

[3] The Thurston County Superior Court's caption for the Guild's appeal, Cause No. 11-2-00385-7, differs from the caption on the PERC decision. For clarity, our caption conforms to the earlier administrative decision, *Yakima County v. Yakima County Law Enforcement Officers' Guild*, No. 21632-U-08-5519, 2011 WL 125216, at *7 (Wash. Pub. Emp't Relations Comm'n Jan. 11, 2011). *See* RAP 3.4.

2

No. 42697-8-II

court's subsequent separate order adopting the PERC's order, and remand to the PERC to conduct interest arbitration on release time for Guild officers to attend union meetings relating to the CBA.[4]

FACTS

On September 11, 2006, the Guild and the County began negotiating a new CBA. The Guild submitted the following two release time proposals for negotiation:

7.3 **Guild Meetings**

A. The [G]uild may send one or two representatives to state or national meetings or conferences concerning training in labor issues concerning administration of the agreement or law enforcement. A total of twelve working days with pay are allowed per year, but no representative is allowed more than twelve working days with pay per year. Time off with or without pay shall not exceed five working days per conference per person.
The representatives or the Guild president shall give the Sheriff at least three weeks['] notice of each conference or meeting. If the conference or meeting is scheduled on an emergency basis, the representative or Guild president shall give the Sheriff notice as soon as is reasonably possible. The Sheriff may disallow attendance by the Guild representative if the Sheriff has a special need for that employee's expertise at the time of the conference, or if, because of an unforeseen shortage of available employees, the Sheriff cannot reasonably spare the employee at the time of the conference.

B. The Sheriff may routinely allow Guild officers a reasonable amount of time while on duty to conduct or participate in general membership and/or Guild board meetings concerning collective bargaining or enforcement of the agreement~~or to conduct necessary Guild financial business which cannot otherwise be performed while off duty~~. Guild representatives shall guard against undue interference with the assigned duties and against the use of excessive time in performing such responsibilities.[5]

---

[4] The PERC also addressed a third release time proposal for Guild financial business that the Guild had withdrawn from interest arbitration, believing that it was still at issue. On appeal, the Guild and the County make it clear that release time for Guild financial business that cannot otherwise be performed while off duty is no longer at issue in this case, as it was struck from the issues submitted to interest arbitration.

[5] Legislative draft form is used to indicate changes between the provisions in the existing CBA and the proposal made during the negotiations. Although several different proposals were made

No. 42697-8-II

AR at 63.

The Guild and the County failed to reach an agreement and engaged in mediation. During mediation, the County repeatedly identified the Guild's release time proposals as permissive subjects of bargaining. After several months of mediation, the parties failed to come to an agreement on multiple issues, including union release time, and those issues were submitted to interest arbitration. PERC's executive director certified a list of "issues at impasse" to be submitted to interest arbitration. AR 161.

The County then filed a complaint with the PERC alleging that the Guild had "committed unfair labor practices by advancing to interest arbitration nonmandatory and/or illegal subjects of collective bargaining." AR 14; RCW 41.56.150. The Guild denied the County's unfair labor practice allegations. PERC's executive director suspended interest arbitration for release time.

The County filed a motion for summary judgment. Both parties agree that the facts are not in dispute. The County argued that the Guild's release time proposals were illegal subjects of bargaining because they induced the County to commit an unfair labor practice by financially assisting the Guild.[6] The County also claimed that "the subject matter is permissive and not subject to impasse and interest arbitration." AR at 243. The Guild argued that not only were the proposals not illegal, but they were mandatory subjects of bargaining because they were directly

---

during negotiations, the proposal as stated is the one that the Guild attempted to certify to interest arbitration.

[6] We note that during oral argument it appeared that the County was not disputing release time for Guild meetings dealing with the CBA or any of the existing CBA release time language; but its briefing indicated that it disputes all release time proposed by the Guild that was argued to impasse. Wash. Court of Appeals oral argument, *Yakima County v. Yakima County Law Enforcement Officers' Guild*, No. 42697-8-II (Nov. 27, 2012), at 17 min., 33 sec. (on file with court).

4

related to wages, hours, and working conditions and, thus, it was not an unfair labor practice to argue those subjects to impasse.

The hearing examiner determined that "[t]he bargaining proposals did not induce the employer to commit an unfair labor practice by financially assisting the union." AR at 323. The hearing examiner also concluded that "the [release time] proposals as refined by the bargaining pr[o]cess and eventually submitted to interest arbitration involve[d] mandatory subjects of bargaining" and dismissed the County's unfair labor practice complaint. AR at 323.

The PERC reversed the hearing examiner's decision, decided that the Guild committed an unfair labor practice by bargaining a permissive subject to impasse, and issued a prospective cease and desist order. After addressing each provision of the release time proposals separately, including the withdrawn portion of the Guild's earlier proposal, the PERC determined that each release time proposal was a permissive subject of bargaining. The PERC therefore concluded that the Guild committed an unfair labor practice by attempting to bargain the release time proposals to impasse.

The PERC vacated the hearing examiner's conclusions of law and entered its conclusions of law:

3. The . . . Guild unlawfully insisted to impasse on a proposal concerning paid employee leave to attend meetings or conferences concerning training in labor issues concerning administration of the agreement or law enforcement in violation of RCW 41.56.150(4) and (1).

4. The . . . Guild unlawfully insisted to impasse on a proposal concerning paid release time for employees to conduct or participate in general membership and/or union board meetings concerning collective bargaining or enforcement of the agreement or to conduct necessary union financial business which cannot otherwise be performed while off duty in violation of Chapter 41.56 RCW.

No. 42697-8-II

AR at 374-75. The PERC also ordered the Guild to cease and desist bargaining release time proposals to impasse and ordered the Guild to withdraw its release time proposal. The superior court affirmed the PERC's decision in full and issued its own order adopting verbatim the PERC's cease and desist order. The Guild timely appeals.[7]

ANALYSIS

I.     STANDARD OF REVIEW

The administrative procedure act (APA), chapter 34.05 RCW, governs our review of a PERC decision in an unfair labor case. *Pasco Police Officers' Ass'n v. City of Pasco*, 132 Wn.2d 450, 458, 938 P.2d 827 (1997). We review the PERC's decision, not that of the hearing examiner or the superior court. *Pub. Emp't Relations Comm'n v. City of Vancouver*, 107 Wn. App. 694, 703, 33 P.3d 74 (2001). We will reverse the PERC's decision if we determine that the PERC erroneously interpreted or applied the law. RCW 34.05.570(3)(d). We review conclusions of law de novo and may substitute our interpretation of the law for the PERC's interpretation. *Pasco Police*, 132 Wn.2d at 458.

We review an order granting summary judgment de novo, engaging in the same inquiry as the body that decided it, here the PERC. *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 171, 110 P.3d 733 (2005). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). Because the parties agree that there are no issues of material fact, we need only determine whether the County was entitled to judgment as a matter of law.

---

[7] In its opening brief the Guild assigns error only to the actions of the superior court. As the County correctly points out, our review is of the PERC's decision, not that of the superior court. Br. of Resp't at 10 (citing *Int'l Ass'n of Firefighters, Local No. 469 v. Pub. Emp't Relations Comm'n*, 38 Wn. App. 572, 575-76, 686 P.2d 1122 (1984)).

## II.     UNFAIR LABOR PRACTICES

It is an unfair labor practice for a bargaining representative to induce a public employer to commit an unfair labor practice. RCW 41.56.150(2). It is also an unfair labor practice for a bargaining representative to refuse to engage in collective bargaining. RCW 41.56.150(4). Under RCW 41.56.030(4), "[c]ollective bargaining" means

> the performance of the mutual obligations of the public employer and the exclusive bargaining representative to meet at reasonable times, to confer and negotiate in good faith, and to execute a written agreement with respect to grievance procedures and collective negotiations on personnel matters, including wages, hours and working conditions, which may be peculiar to an appropriate bargaining unit of such public employer, except that by such obligation neither party shall be compelled to agree to a proposal or be required to make a concession unless otherwise provided in this chapter.

There are "three broad categories of issues related to collective bargaining: (1) mandatory issues, (2) permissive issues, and (3) illegal issues." *Patrol Lieutenants Ass'n v. Sandberg*, 88 Wn. App. 652, 657, 946 P.2d 404 (1997). Illegal issues are not the proper subject of collective bargaining and may not be considered in the collective bargaining process. *Sandberg*, 88 Wn. App. at 657-58. Thus, a union unlawfully refuses to bargain or induces an employer to commit an unfair labor practice if it insists on an illegal proposal. *Burlington Police Emps. Guild v. City of Burlington*, No. 12561-U-96-2986, 1997 WL 117651, at *8 (Wash. Pub. Emp't Relations Comm'n Feb. 19, 1997). It is also an unfair labor practice for an employer to interfere with or dominate a union by providing financial support, and a proposal that would require the employer to do so is illegal. RCW 41.56.140(2); *Burlington Police*, 1997 WL 117651, at *8.

Parties to a CBA *must* bargain in good faith on mandatory issues. *Sandberg*, 88 Wn. App. at 657. "In contrast, the parties *may* negotiate over 'permissive' or 'nonmandatory'

7

subjects, but they are not obliged to do so." *Sandberg*, 88 Wn. App. at 657 (emphasis added).

Although permissive subjects of bargaining, unlike illegal subjects, may be negotiated, it is an

unfair labor practice to bargain to impasse over a permissive subject of bargaining. *Klauder v.*

*San Juan County Deputy Sheriffs' Guild*, 107 Wn.2d 338, 342, 728 P.2d 1044 (1986). Thus,

categorizing a subject of bargaining as mandatory or permissive determines whether one party

may argue the issue to impasse without engaging in an unfair labor practice.

"[W]ages, hours and other terms and conditions of employment are subjects about which

the parties must bargain, and are categorized as 'mandatory' subjects." *Klauder*, 107 Wn.2d at

341. Mandatory subjects of bargaining are "limited to matters of direct concern to employees."

*Int'l Ass'n of Fire Fighters, Local Union 1052 v. Pub. Emp't Relations Comm'n*, 113 Wn.2d

197, 200, 778 P.2d 32 (1989). Permissive subjects of bargaining include "[m]anagerial decisions

that only remotely affect 'personnel matters', and decisions that are predominately 'managerial

prerogatives.'" *Fire Fighters, Local 1052*, 113 Wn.2d at 200.

A balancing test is used to determine whether a subject is a mandatory or permissive

subject of bargaining. *Fire Fighters, Local 1052*, 113 Wn.2d at 203. Under the *Fire Fighters,*

*Local 1052* test, we balance "the relationship the subject bears to 'wages, hours and working

conditions'" and "the extent to which the subject lies 'at the core of the entrepreneurial control'

or is a management prerogative." 113 Wn.2d at 203 (internal quotation marks omitted) (quoting

*Spokane Educ. Ass'n v. Barnes*, 83 Wn.2d 366, 376, 517 P.2d 1362 (1974)). The focus of the

balancing test is "to determine which of these characteristics predominates." *Fire Fighters,*

*Local 1052*, 113 Wn.2d at 203.

II.     THE GUILD'S PROPOSALS

The PERC ruled that the Guild committed an unfair labor practice when it bargained to impasse on its release time proposals and the PERC issued a cease and desist order preventing the Guild from arguing to impasse in the future on any of its release time proposals.[8] We affirm the PERC's decision on release time for travel and conferences as proposed; but we reverse and vacate its decision about release time for Guild officers to attend union meetings addressing collective bargaining and enforcement of the CBA and we vacate the PERC's cease and desist order.

A. Release Time for Union Business

The County accused the Guild of committing an unfair labor practice by submitting a proposal for paid Guild officer release time for union meetings relating to the CBA to interest arbitration because it was both illegal and a permissive subject of bargaining. The PERC agreed with the County. We disagree.[9]

Paid release time to conduct union business is a mandatory subject of bargaining if the union business involves the direct administration of the agreement between the employer and the union. *Axelson, Inc., Subsidiary of U.S.A. Indus., Inc. v. Nat'l Labor Relations Bd.*, 599 F.2d 91,

[8] Although the PERC's order included release time for financial matters in addition to the two release time proposals at issue here, the Guild withdrew that portion of the proposal and, thus, it was not properly before the PERC in the adjudication of the disputed release time proposals. We address the prospective nature of PERC's ruling on this issue later in this opinion.

[9] Even if a proposal is legal, it may be a permissive subject of bargaining—one that cannot be argued to impasse. *Klauder*, 107 Wn.2d at 342. The Guild's briefing addresses whether its proposal is a mandatory subject of bargaining and whether the proposal is legal based on the County's position that it could not contribute financial support to a union by authorizing paid release time. But at oral argument, the County also raised an objection based on its illegally controlling a union's business if it had to give release time for union meeting attendance. Wash. Court of Appeals oral argument, *Law Enforcement Officers Guild*, No. 42697-8-II (Nov. 27, 2012), at 26 min., 37 sec. (on file with court).

95 (5th Cir. 1979) (paid release time for time spent in negotiation with employer is mandatory subject); *Nat'l Labor Relations Bd. v. BASF Wyandotte Corp.*, 798 F.2d 849, 852-53 (5th Cir. 1986) (paid time to union stewards for performance of union duties is mandatory subject). In its decision, the PERC provided an illustrative list of examples of direct administration: "labor management meetings, the processing and adjustment of grievances, and negotiations regarding changes to the existing agreement." *Yakima County v. Yakima County Law Enforcement Officers' Guild*, No. 21632-U-08-5519, 2011 WL 125216, at *7 (Wash. Pub. Emp't Relations Comm'n Jan. 11, 2011).

Here, the PERC concluded, and the County now argues, that the proposal for paid release time was not a mandatory subject of bargaining because it was only indirectly related to the administration of the agreement in that it did not involve direct interaction with the employer. The PERC's decision and the County's argument on appeal rely on the same three PERC decisions—*Enumclaw Educ. Ass'n v. Enumclaw Sch. Dist.*, Decision 222, 1977 WL 182045 (Wash. Pub. Emp't Relations Comm'n Mar. 31, 1977), *City of Pasco v. Int'l Ass'n of Fire Fighters, Local 1433*, No. 8521-U-90-1841, 1990 WL 656237 (Wash. Pub. Emp't Relations Comm'n Sept. 27, 1990), and *Burlington Police*, 1997 WL 117651—in which the PERC concluded that proposals related to union release time were unfair labor practices.

Although the PERC and the County cited these cases in support of their claims that the paid release time proposals were permissive subjects of bargaining, the cases actually address whether such proposals were illegal subjects of bargaining. We address these cases to clarify that the Guild's proposal on paid release time for Guild officers to attend union meetings here is distinguishable from those in the cases the County relies upon and, thus, is not illegal.

In *Enumclaw Education Ass'n*, the PERC concluded that the association's proposal for 20 days' paid release time to conduct "association business" was improper because it would result in financial support to a union. 1977 WL 182045, at *2-3. The PERC reasoned that "[u]nder the terms of the [a]ssociation's proposal, none of the released time need be spent meeting or conferring with the employer or its representatives. It may be spent on any association business, including organizing the employees of some other school district." *Enumclaw Educ. Ass'n*, 1977 WL 182045, at *2. In *Fire Fighters, Local 1433*, the PERC concluded that a proposal for 96 hours paid leave per year "for conduct of [u]nion business" suffered from the same "fatal defect" as the clause in *Enumclaw Education Ass'n* because it put "no limitation whatever on the purposes for which the union could use the 96 hours per year of employer-paid leave time." 1990 WL 656237, at *7, 9. The PERC concluded that "[t]he union could easily have proposed modifications to cure the 'unrestricted' problem identified by the [PERC] and court in [*Enumclaw Education Ass'n*], but chose not to do so." *Fire Fighters, Local 1433*, 1990 WL 656237, at *8. Thus, the PERC concluded that the union committed an unfair labor practice by arguing a nonmandatory subject of bargaining to impasse. *Fire Fighters, Local 1433*, 1990 WL 656237, at *7.

In *Burlington Police*, the PERC concluded that a proposal for 40 hours of paid leave to the guild's president "for [g]uild business such as attending labor conventions, conferences, or seminars" was illegal, based on the reasoning in *Enumclaw Education Ass'n* and *Fire Fighters, Local 1433*. 1997 WL 117651, at *7-8 (internal quotation marks omitted).

The PERC's reliance on these cases for invalidating the Guild's proposal caused it to interpret too narrowly the Guild's role in administration and enforcement of the CBA. And in reaching its decision, the PERC interpreted the Guild's proposal too broadly. The PERC's

11

decision states, "Thus, the union's proposal would allow *all bargaining unit employees* a reasonable amount of paid release time to attend general membership meetings or board meetings that concerned *either* collective bargaining *or* enforcement of the collective bargaining agreement." AR at 373 (first emphasis added). But the Guild did not propose that all employees receive paid release time for meetings. Rather, it proposed, "The Sheriff may routinely allow Guild officers a reasonable amount of time while on duty to conduct or participate in" such meetings. AR at 63.

The Guild asserts, and we agree, that its proposed restriction on release time for Guild officers to attend meetings related to collective bargaining or the enforcement of the agreement cures the proposal of illegality. The Guild proposed paid release time for its officers to attend membership or board meetings related to the enforcement and administration of the agreement between the Guild and the County. Thus, unlike the proposals in *Enumclaw Education Ass'n* and its progeny, the proposal here does not provide for release time for "union business" generally, but rather, for union business related directly to its CBA with the County. *See Burlington Police*, 1997 WL 117651, at *7-8; *Fire Fighters, Local 1433*, 1990 WL 656237, at *7; *Enumclaw Educ. Ass'n*, 1977 WL 182045, at *2.

Turning to the issue of whether the proposal was a permissive or mandatory subject of bargaining, we note that by restricting release time to union business directly involving the County (i.e., the County representatives must also be included in any such meeting), the PERC ignores the duties imposed on Guild board members to represent the Guild's members in discussions of wages, hours, and working conditions governed by the CBA, as well their duty to process grievances or potential grievances, all of which affect each member and which, without exception, ultimately involve the County.

Our Supreme Court has interpreted RCW 41.56.080[10] to impose a duty of fair representation on unions because of their status as the exclusive bargaining agent for their members. *Allen v. Seattle Police Officers' Guild*, 100 Wn.2d 361, 371–72, 670 P.2d 246 (1983). "A union breaches its duty of fair representation when its conduct is discriminatory, arbitrary, or in bad faith." *Muir v. Council 2 Wash. State Council of County & City Emps.*, 154 Wn. App. 528, 531, 225 P.3d 1024 (2009). The doctrine applies not only to "'negotiating, administering or enforcing a collective bargaining agreement,'" but also to "day-to-day adjustments in the contract and other working rules, resolutions of new problems and protection of employee rights already secured by contract." *Allen*, 100 Wn.2d at 372-73 (internal quotation marks omitted) (quoting *Allen v. Seattle Police Officers' Guild*, 32 Wn. App. 56, 64, 645 P.2d 1113 (1982), *aff'd*, 100 Wn.2d 361. "In the context of grievance processing, the duty of fair representation prohibits a union from ignoring a meritorious grievance or processing a grievance in a perfunctory manner." *Muir*, 154 Wn. App. at 531.

Because union representatives' duties include fairly and adequately representing employees, union representatives cannot legally breach that duty by failing to monitor the members' concerns about the CBA, by failing to adequately prepare for negotiations or grievance issues that involve employers, or by failing to enforce members' rights secured by the CBA. Under the *Fire Fighters, Local 1052* balancing test, we examine "the relationship the subject bears to 'wages, hours and working conditions'" and "the extent to which the subject lies

---

[10] RCW 41.56.080 provides:
> The bargaining representative which has been determined to represent a majority of the employees in a bargaining unit shall be certified by the commission as the exclusive bargaining representative of, and shall be required to represent, all the public employees within the unit without regard to membership in said bargaining representative.

'at the core of the entrepreneurial control' or is a management prerogative." 113 Wn.2d at 203 (internal quotation marks omitted) (quoting *Barnes*, 83 Wn.2d at 376). Applying this test here, it is clear that the Guild's interest in performing its duties to its members regarding wages, hours, and working conditions predominates in this portion of the Guild's proposal for paid release time. *Fire Fighters, Local 1052*, 113 Wn.2d at 203.

Thus, the County's contention that the Guild's proposed paid release time for collective bargaining or enforcement of the agreement is a permissive subject of bargaining fails, as the preparation for those activities is inextricably intertwined with wages, hours, and working conditions covered by the CBA that are mandatory subjects of bargaining. We conclude that the PERC erred in characterizing negotiation of Guild board members' release time for meetings concerning the CBA as a permissive subject of bargaining.

Accordingly, we hold that the Guild did not commit an unfair labor practice by submitting an illegal proposal to interest arbitration; and it did not commit an unfair labor practice by bargaining a permissive subject of bargaining to impasse and by certifying to interest arbitration the issue of release time for Guild officers to attend Guild meetings dealing with the CBA. We reverse the PERC's order and remand for interest arbitration on release time for Guild board members to attend membership and board meetings dealing with the CBA and its enforcement.

B. Release Time for Union Training

The County also asserts that the Guild committed an unfair labor practice by submitting the issue of release time for travel and attendance at conferences relating to labor issues to interest arbitration because paid release time for union training is a permissive subject of bargaining. The Guild argues that because the provision relates to paid release time "for

14

purposes associated with the employer's business," it directly impacts wages, hours, and working conditions and is a mandatory subject of bargaining. Br. of Appellant at 34.

The PERC ruled that because this particular provision related to *discretionary* training, it was unrelated to wages, hours, and working conditions that provide for mandatory interest arbitration. Therefore, paid release time for union training was a permissive subject of bargaining and the Guild committed an unfair labor practice by attempting to certify the proposal to interest arbitration. We hold that the PERC properly determined that the Guild's specific proposal for paid release time for discretionary union training was a permissive subject of bargaining but that the Guild's proposal was not illegal.

The PERC's earlier reasoning in *International Ass'n of Fire Fighters, Local 2916 v. Spokane County Fire District 9*, No. 7300-U-88-1506, 1991 WL 733708 (Wash. Pub. Emp't Relations Comm'n 1991) is instructive. In *Fire Fighters, Local 2916*, the county began developing performance standards by creating and evaluating different aspects of a training system. 1991 WL 733708, at *1. The union objected to the development of the performance standards because a potential would exist for disciplinary action against union members who failed to meet the proposed performance standards. *Fire Fighters, Local 2916*, 1991 WL 733708, at *1. The PERC determined that training and performance standards fell squarely within managerial prerogatives and were, thus, permissive subjects of bargaining. *Fire Fighters, Local 2916*, 1991 WL 733708, at *4. But the *consequences* of those training and performance standards (i.e., discipline for failing to meet required performance standards) could be a mandatory subject of bargaining. *Fire Fighters, Local 2916*, 1991 WL 733708, at *3-4.

Here, the Guild's proposal about conference and travel release time provides for Guild representatives to attend training and conferences of the Guild's choosing. The training at issue

in this proposal is not required by the County. Further, there are no consequences imposed by the County if the Guild members fail to attend the training or conferences. Therefore, the Guild's specific proposal does not have a broad effect on wages, hours, or working conditions of Guild members. On the other hand, if the County required Guild members to attend training on labor and law enforcement issues but provided no paid leave or disciplined employees for failure to meet standards for which no training was provided, a proposal for paid release time to attend the training would be a mandatory subject of bargaining. *Fire Fighters, Local 2916*, 1991 WL 733708, at *3-4. But that is not the case here.

The Guild argues that because the proposal is limited to training related to only labor and law enforcement issues, the training is associated with the employer's business and is mutually beneficial to both the County and the Guild, thus curing the defect in the proposal. The Guild is correct that demonstrating a sufficient nexus between the release time and the bargaining relationship between the Guild and the County may cure the proposal of illegality. *Fire Fighters, Local 1433*, 1990 WL 656237, at *8. But it cannot change a permissive subject of bargaining into a mandatory subject of bargaining.

We hold that the Guild's proposal concerning paid release time for union training is a permissive subject of bargaining and the Guild committed an unfair labor practice by bargaining the proposal to impasse and attempting to certify the issue to interest arbitration.

III.    THE PERC CEASE AND DESIST ORDER

The Guild also argues that "the vague and overbroad nature of the PERC order will likely create *future* compliance questions." Br. of Appellant at 40. After adjudicating the specific issues before it, the PERC ordered the Guild to cease and desist from:

> Refusing to bargain collectively with [the] County by insisting to impasse on proposals concerning paid release time for attendance at state or national meetings or conferences concerning training in labor issues concerning administration of the agreement or law enforcement and paid release time to conduct or participate in general membership meetings and/or union board meetings concerning collective bargaining or enforcement of the agreement or to conduct necessary union financial business which cannot otherwise be performed while off duty.

AR at 375. We first note that this order includes restrictions relating to language that was stricken by the Guild during its negotiations or mediation with the County referring to union financial business. By including this proscription in its cease and desist order, the PERC's order clearly exceeded the scope of the adjudication before it and that portion of the order is, instead, a prospective ruling or policy not arising from the disputed issues.

Such a result is not appropriate under the narrow scope of adjudication under the Washington APA. Because the Washington APA limits adjudicative orders to those deciding the rights, duties, privileges, immunities, or other legal interests of specific persons, we conclude that the PERC may not issue adjudicative orders with only prospective effect. RCW 34.05.010(11)(a). *See also Snohomish County Pub. Transp. Benefit Area v. Pub. Emp't Relations Comm'n*, No. 42435-5, 2013 WL 506559, at *4 (Wash. Ct. App. February 12, 2013).

The APA provides two primary sets of proceedings for agency action: rulemaking and adjudication. RCW 34.05.310-.395; RCW 34.05.410-.494. Rulemaking requires agencies to give public notice of proposed rules and allow for public comment. RCW 34.05.320, .325. The APA defines an "[a]djudicative proceeding" as one where an opportunity for a hearing is required "before or after the entry of an order by the agency." RCW 34.05.010(1). "'Order,' without further qualification, means a written statement of particular applicability that finally determines the legal rights, duties, privileges, immunities, or other legal interests *of a specific person or persons*." RCW 34.05.010(11)(a) (emphasis added).

17

In contrast, agencies are not required to give public notice of adjudicative proceedings or to allow for public comment. RCW 34.05.434. But they must allow an opportunity for hearing. RCW 34.05.010(1). There was no hearing about release time for Guild board members to conduct necessary union financial business that cannot otherwise be performed while off duty because that language was stricken before the Guild requested interest arbitration of the release time provisions. Thus, the PERC's order restraining the Guild on that issue has no place in this adjudication and must be vacated.

Second, we reverse the PERC's determination that release time for general membership meetings and/or union board meetings concerning collective bargaining or enforcement of the CBA is a permissive and not a mandatory bargaining subject. Thus, this portion of the cease and desist order must also be vacated.

Finally, the Guild asserts that "[u]nder the literal wording of th[e] PERC order, the Guild would be restrained from presenting alternative formulations of release time language that might otherwise be negotiable simply because they touch upon these subjects." Br. of Appellant at 41. We agree that the PERC's order must be vacated in its entirety as it unreasonably creates a prior restraint on the Guild's collective bargaining rights. While the intent of the order may relate to the just-completed adjudication, we agree with the Guild that the language can be interpreted as prospectively ordering the Guild to not raise and bargain to impasse an issue of release time related to any of the three categories of activity in the future.

Because we vacate the portions of the order addressing release time for meetings and for financial affairs, we focus in this discussion on the portion of the PERC order stating that the Guild must immediately cease and desist "[r]efusing to bargain collectively with [the] County by insisting to impasse on proposals concerning paid release time for attendance at state or national

meetings or conferences concerning training in labor issues." AR at 375. The PERC resolved the existing dispute about whether release time for training was permissive or mandatory, and we agree with the PERC's resolution of this issue based on the proposed language. But paid release time for training is not per se a nonmandatory subject of bargaining, and this portion of the order restrains the Guild from future bargaining to impasse its position on release time for state or national meetings or conferences relating to labor negotiations or agreements without an indication of what those specific proposals might include. As such, the order exceeds the dispute before the PERC and attempts to determine the legal rights, duties, privileges, immunities, or other legal interests of the Guild and the County in the absence of a dispute. In other words, the order adjudicates without a hearing, which hearing is required "before or after the entry of an order by the agency." RCW 34.05.010(1). In doing so, the PERC exceeded its authority to issue an adjudicative order on the issue. We vacate that portion of the order as well, resulting in the entire PERC cease and desist order being vacated.

IV.     THE SUPERIOR COURT'S ORDER

Finally, the Guild appeals the superior court's order, arguing that the superior court lacks the authority to issue its own order when reviewing agency action. The Guild is correct.

When reviewing an agency order in an adjudicative proceeding, the trial "court may (a) affirm the agency action or (b) order an agency to take action required by law, order an agency to exercise discretion required by law, set aside agency action, enjoin or stay the agency action, remand the matter for further proceedings, or enter a declaratory judgment order." RCW 34.05.574(1). In other words, the trial court is limited to ruling solely on the agency's decision and may not issue orders making its own rulings regarding the substance of the dispute. We vacate the superior court's order.

19

We affirm the PERC's ruling that the Guild's specific proposal on discretionary release time for travel and conferences is subject only to permissive bargaining. We reverse its ruling and remand to the PERC for mandatory interest arbitration on release time for Guild board members to attend meetings on collective bargaining and enforcement of the CBA because the proposal was neither illegal nor was it a nonmandatory subject of bargaining. We also vacate PERC's cease and desist order and the superior court's order.

_Van Deren, J._
VAN DEREN, J.

I concur:

_Hunt_
HUNT, J.

QUINN-BRINTNALL, J. (dissenting) — I agree that the Yakima County Law Enforcement Officers' Guild's (Guild) first proposal regarding paid leave for training and attendance at national conferences is a permissive subject of bargaining and was improperly certified for interest arbitration. And although I agree with the majority's analysis of the Guild's second proposal as they interpret it, I believe that their interpretation is based on an amended reading of the Guild's proposal. In my opinion, as written, the Guild's proposal is an illegal subject of bargaining. Therefore, the Guild committed an unfair labor practice by certifying the proposal to interest arbitration.

The Guild's proposal reads,

> B.    The Sheriff may routinely allow Guild officers a reasonable amount of time while on duty to conduct or participate in general membership and/or Guild board meetings <u>concerning collective bargaining or enforcement of the agreement</u>or to conduct necessary Guild financial business which cannot otherwise be performed while off duty. Guild representatives shall guard against undue interference with the assigned duties and against the use of excessive time in performing such responsibilities.[11]

Administrative Record at 63. The majority's reading ignores the "and/or" language of the proposal, and, as a result, amends the "concerning collective bargaining or enforcement of the agreement" language to modify both general membership and Guild board meetings. But as written, the "concerning collective bargaining or enforcement of the agreement" language modifies only Guild board meetings. General membership meetings remain unconstrained, meaning that under the proposal Guild officers could request time off to attend any general

---

[11] Legislative draft form is used to indicate changes between the provisions in the existing collective bargaining agreement and the proposal made during the negotiations. Although several different proposals were made during negotiations, the proposal as stated is the one that the Guild attempted to certify to interest arbitration.

21

membership meeting, not simply those related to the collective bargaining agreement between the Guild and Yakima County.

Because Guild officers would be able to receive paid release time to perform any Guild function, the Guild's proposal suffers from the same defects as the proposals in *Enumclaw Education Association v. Enumclaw School District*, Decision 222, 1977 WL 182045 (Wash. Pub. Emp't Relations Comm'n Mar. 31, 1977), *City of Pasco v. International Association of Fire Fighters, Local 1433*, No. 8521-U-90-1841, 1990 WL 656237 (Wash. Pub. Emp't Relations Comm'n Sept. 27, 1990), and *Burlington Police Employees Guild v. City of Burlington*, No. 12561-U-96-2986, 1997 WL 117651 (Wash. Pub. Emp't Relations Comm'n Feb. 19, 1997). Accordingly, the Guild committed an unfair labor practice by certifying its proposal to interest arbitration.

I would like to note that if the Guild's proposal was written as the majority reads it, limited to the topic of collective bargaining and enforcement, I would agree that the proposal was a mandatory subject of bargaining. But we do not have the authority to rewrite a proposal so that an illegal or permissive proposal becomes mandatory.

I concur without reservation in the majority's decision regarding the Guild's proposal related to paid release time for training and attending national conferences. Because I disagree with the majority's amending by interpretation the Guild's actual proposal related to paid release time for Guild membership and board meetings, I respectfully dissent.

QUINN-BRINTNALL, J.